(No. 37735.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RONALD EDWARD NEWMAN, Plaintiff in Error.

*Opinion filed March 18, 1964.*

JOHN R. SNIVELY, of Rockford, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and WILLIAM R. NASH, State's Attorney, of Rockford, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN W. NIELSEN, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Ronald Edward Newman was indicted in the circuit court of Winnebago County for the crime of burglary, a jury found him guilty and the court sentenced him to the penitentiary for a term of 3 to 10 years. He prosecutes this writ of error to review the conviction.

The defendant first argues that the indictment which charges the breaking and entering of "the building of one Jess F. Bablitt, as lessee" is fatally defective because it fails to allege ownership of the building. In *People* v. *Stewart,* 23 Ill.2d 161, we made a careful analysis of this contention and the purpose of alleging ownership of the building burglarized and concluded that an indictment that charges the unlawful entry of a building in possession of another is sufficient.

Defendant, his brother Donald, Kenneth Madden and Leslie Wilson were riding around Rockton sometime after 10:00 o'clock P.M. on February 12, 1961, with four girls. Two of the girls were taken home between 11 and 12 o'clock. There is a conflict in the testimony as to whether defendant and Madden were then taken to defendant's home or whether they were let out of the car within a few blocks of the gas station that was burglaried. At any rate, the car was later stopped by the police in the neighborhood of the gas station at 12:45 o'clock. The police talked to Wilson who was driving and then let the car proceed. At 1:00 o'clock the police discovered a broken window at the gas station and learned that it had been burglarized.

Virginia May Jones, one of the girls who remained in the car, was called by the People. After she had stated that

she saw defendant the following day, she was asked if defendant told her what he did at the gas station. She replied "no" and the prosecution asked that she be made a court's witness. She was then shown a written statement which she acknowledged having signed. She also admitted making the following statements: "I then asked him if he got in the gas station and he said 'yes' ". "He said they were just getting out of the gas station when they saw the squad car." She stated, however, that at the time she was arrested and made the statements she was seven months pregnant and that the police officers threatened to keep her in jail and make her have her baby there.

Donna Robbins, the other girl who had remained in the car, was also called by the People. She was asked whether there was any conversation between defendant and Wilson before defendant and Madden got out of the car and she replied "no". At this point she was made a witness of the court. After she admitted making a statement to the police, she was asked if she had stated: "While we were driving around Ronnie and Les were whispering to each other", and she replied "no". She was then asked if she had stated: "I knew when the boys were talking about breaking into that place that we could all get into trouble if we were caught", and she replied "no". She again admitted signing the statement but said that the statement given to the police was not true.

After defendant's brother, Donald, testified that he had not had any conversation with his wife about the burglary, Donald's wife, Sharon Newman, was called by the People as a witness in rebuttal. She denied that her husband had told her about the burglary, at which point the court granted the prosecution's request that she be made the court's witness. On cross-examination the witness admitted that she had made a written statement to the police. The prosecution cross-examined her with regard to this statement in some detail. The witness stated a number of times that the writ-

ten statement was not true and that the police matron had told her what to write. She was then asked "You read this before you signed and it says 'I have given the above statement in the office of the Police woman this date at 6:15 P.M. I have read the above statement and it is the truth.' " She answered, "Yes, and if you were going to be locked in a cell you would sign something too." The court then accused her in the presence of the jury thusly, "You got that now from the lawyer that examined you.", and the witness replied, "No I didn't." Objection to the comment of the court was overruled. The prosecution stated that it rested its case, at which point the court asked, "Do you want to read this statement to the jury?" The prosecution replied, "I have gone over it twice already with the witness". The court then said, "Do whatever you want to do. I am not telling you how to try your case. But if I were the State's Attorney, and had a statement like that, and she is called as a Court's witness, I sure would read it to the jury." The defense attorney again objected to the comments of the court and objected to the reading of the statement. The court then said, "I object to the comments of counsel. You want to read it or don't you?" The prosecutor then said, "I will read it."

The pertinent part of this statement which was read to the jury is:

"While I was in Phoenix, Arizona with Ronald and Donald Newman, Wanda Newman and Kenneth Madden, I had occasion to talk to Donnie alone about the burglary that he and Ronnie were wanted for in Rockford.

"Donnie told me that on the night of the burglary he had been out with a bunch of kids and that he had been asked by two of the fellows to let them off on West State Street near the bowling alley. These same two fellows had asked Donnie to pick them up a few minutes later. I am not real certain which two fellows he is referring to, but Donnie also told me that he told Ronnie not to do it. He said

that he told Ronnie that he would get into trouble and he had been in enough trouble.

"Donnie also told me that while he was driving around waiting for Ronnie and this other fellow, the police in a car stopped them and asked them what they were doing out there so late at night. When the police let them go Donnie told me that he did not wait for Ronnie and the other fellow, but they just took off.

"The other thing I heard about this burglary was on the way to Phoenix in the car when one of the boys, I don't remember which one, said something about 75 pennies that they had thrown away."

There is no substantive evidence showing that defendant committed the crime. The People assert that the warning by Donald Newman to defendant "not to do it" and the admission by defendant to Virginia Jones that he had entered the gas station shows that he did commit the burglary. The incriminating extrajudicial statements that were made to the police were admissible, if at all, only for impeachment purposes and are not to be given any substantive or independent testimonial value. (*People* v. *Morgan*, 28 Ill.2d 55; *People* v. *Moses*, 11 Ill.2d 84; see also 3 Wigmore 3rd ed., sec. 1018.) To give these statements substantive value would permit the conviction of men on extrajudicial statements of witnesses—a practice that runs counter to the notions of fairness upon which our legal system is founded. (*Bridges* v. *Wixon*, 326 U.S. 135, 89 L. ed. 2103, 65 S. Ct. 1443.) We hold therefore that when the unsworn incriminating statements which were made to the police and which were admitted for impeachment purposes are stripped of their substantive value, there is insufficient evidence to show that defendant committed the crime.

Several observations concerning the use of the prior statements are pertinent in view of the fact that this case must be remanded for a new trial. The questioning of Sharon Newman about what her husband told her he said

to defendant and what he told her he saw defendant do, called for hearsay answers. The prosecution then attempted to impeach her with a prior hearsay statement. To compound the error, the prosecution covered the statement twice and then read it in full to the jury. The error was magnified by the trial judge's remark that the defendant's attorney told her to say the prior hearsay statement was not true and the judge's suggestion to the prosecution to read it to the jury.

Virginia Jones testified that her statement to the police was the result of being told that she would have to stay in jail and have her baby there and the prosecution did not offer anything to contradict this testimony. The voluntary character of an extrajudicial statement must be established before it may be used even for impeachment purposes. *People* v. *Tate,* Nos. 36481-36566 cons.; *People* v. *Hiller,* 2 Ill.2d 323; *People* v. *Adams,* 1 Ill.2d 446.

Donna Robbins admitted making a prior written statement to the police but denied that she made certain statements as asked by the prosecution. There is nothing in the record to show that her prior written statement contained the statements she denied making.

Finally, we fail to find a single caution to the jury that the prior statements of the witnesses were offered only for impeachment purposes and were to be given no substantive value, nor was the jury instructed on this matter. The court should, upon request, instruct the jury of the purpose for which the prior statements were admitted. *People* v. *Moses,* 11 Ill.2d 84.

The judgment of the circuit court of Winnebago County is reversed and the cause remanded for a new trial.

*Reversed and remanded.*