ADAM PERMINAS, Plaintiff-Appellee, *v.* MONTGOMERY WARD & COMPANY, Defendant-Appellant.

(No. 54872; ▮▮▮▮▮▮▮▮)

First District (5th Division)—September 7, 1973.

*Modified opinion upon denial of rehearing January 31, 1974.*

Baker & McKenzie, of Chicago (William F. McNally, Thomas F. Tobin, Francis D. Morrissey, and Michael K. Murtaugh, of counsel), for appellant.

Horwitz, Anesi, Ozmon & Associates, Ltd., of Chicago (Nat P. Ozmon and Dario A. Garibaldi, of counsel), for appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

By his complaint, based on a negligence theory, plaintiff sued for the recovery of damages for personal injuries suffered as a result of a fall which occurred in one of defendant's department stores. After a bench trial, judgment was entered in favor of plaintiff in the amount of $85,000. Defendant now raises three contentions on appeal: (1) the evidence presented at trial did not establish a prima facie case on the issue of defendant's negligence; (2) the trial court erred in refusing to permit defendant to introduce a certain exhibit; and (3) the amount of the judgment was excessive.

The testimony at the trial was as follows:

*Adam Perminas*, plaintiff, in his own behalf:

On May 31, 1966, at about 4:00 P.M., he and his wife arrived at defendant's store, first shopping on the upper floors and then going to the basement. His wife stayed in the women's clothing department in the front section, while he went to the housewares department in the rear. There were not many people in the area where he was shopping. The lighting was bright, and he was wearing his glasses. He was walking down an aisle in the paint section, looking at various merchandise displays, when he stepped on an object and both feet went out directly in front of him. He fell on his buttocks, bracing himself with his elbows behind him to try to keep his head from hitting the floor. (His head probably did hit the floor, because he later noticed a bump on his head which he showed to the doctor.) He did not see the object which caused his fall until after he fell, at which time, while he was still on the floor, an object bounced off a carton and rolled back toward him. It was a plastic triangle with three wheels on the underside so that it stood about one and a half to two inches off the ground. The object did not have a price tag on it, nor was it labeled with defendant's name.

He did not feel any pain other than that the wind had been knocked out of him, but he did not attempt to get up. He had fallen in an aisle near some double doors, and while he was still on the floor, a male employee came out of these doors. The witness asked the employee for help, who replied, "All right," went back through the doors, and reappeared a few minutes later with another male employee. One of the men left to get a glass of water and returned shortly with the water and a female employee. The witness was still on the floor, and no one other than those three employees were in sight. When he told them he had slipped on a roller-type object, the woman picked up the triangular object and threw

it away. One of the male employees then helped him up and walked with him toward the doctor's office, located at the front of the store on one of the upper floors. As they neared the center of the basement, the witness' wife walked up, and the employee took both the witness and his wife up one flight of stairs and then in an elevator to the doctor's office. He was in the doctor's office about 40 minutes, answering questions. Although both a doctor and nurse were present, neither of them examined him. By this time, his back was beginning to hurt, and he told the nurse of the pain. The nurse told him to go home and take a hot bath and that the pain would subside. He and his wife left the store, he driving the car, and they arrived home at about 5:00 or 6:00 P.M.

There was extensive evidence on the issue of damages, including medical testimony concerning two back operations, but in the light of our view on the question of liability, a recitation of that evidence is not called for here.

*Anna Stecyna,* for the plaintiff:

She was employed by defendant as a clerk. In April, 1966, she was working in the housewares department located in the rear section of the basement of the store. On May 1, 1966, she was transferred to the hardware department located across the aisle from the housewares department "up on the other end." She was in an automobile accident on May 26, 1966, and did not return to work after that time. Consequently, she was not in the store on the date of plaintiff's accident.

While working in the housewares department, a month before the incident in question, she became familiar with certain objects triangular in shape and having three wheels on them. They were a regular unit to a waxer or polisher. She had seen children and employees of the store trying to use these objects as roller skates, so she would pick them up off the floor and put them on one of the back counters low down. One of the polishers with the wheel attachment was on display, the others were in cartons. She did not know if the wheel attachments had been on the floor after May 1, 1966, or whether they had been on display on May 31, 1966. She had no reason to see them. However, after her transfer on May first, she did see one which somebody had moved to the hardware department and she returned it to the counter in the housewares department.

At the close of the cross-examination of this witness, defense counsel made a motion to strike all of her testimony as being irrelevant. Whereupon, plaintiff's attorney stated that he thought he had heard cross-examination to the effect that the wheel attachments were owned by somebody else, and that "the only purpose [of her testimony] is to show these are Montgomery Ward property, and this is three to four weeks

before this." Accepting this statement as to the narrow objective of the witness' testimony, the court then denied defendant's motion to strike, but expressly ruled that the testimony would be admitted solely for the limited purpose of showing that defendant "had some of those [roller-type objects] in the store within thirty days from this accident."

*David Neesan,* for the plaintiff:

On May 31, 1966, he was employed by defendant to do heavy stock work. He was working in the area toward the back of the basement of the store when he came upon a man sitting on the floor. He also saw a triangular object with wheels on it on the floor either across from the man or in the next aisle.

*Eddie L. Cephas,* for the defendant:

On May 31, 1966, he was employed by defendant as a porter in the basement of the department store. On that date, at about 4:00 P.M., he came upon a man in the aisle. He could not remember whether the man was sitting or squatting. The man told him that he had just fallen on a piece of metal and had had the wind knocked out of him. The witness looked around in the aisle for something on the floor but did not see anything. He then went to inform another employee, David Neesan, of the incident, and when Neesan came to aid the man, the witness left. He thought that the man had stood up without any help.

*Ann Pishum,* for the defendant:

On May 31, 1966, she was employed by defendant as a protection supervisor, with her office in the basement of the store. On that date, at about 4:30 P.M., Neesan came to her office to advise her that someone had had an accident. She went with Neesan to the housewares department and came upon a man in the aisle. She asked for his name and address, and the name he gave was Adam Perminas. He told her that he had fallen, and she told him that he should go to the medical department. He did not want to go, but she insisted. She and Neesan escorted him to the front stairway, and Neesan took him up to the medical department. Plaintiff did not limp or need any assistance in walking.

When first in the aisle in the housewares department, she looked at the floor, and saw that it was "free and clear." There were no scuff marks on the floor, and she did not see a triangular object with wheels on it in the aisle. After she had escorted plaintiff to the front stairway, she returned to the housewares department and inspected the area again. She looked behind one of the open double doors and found a triangular attachment.

On cross-examination for impeachment purposes, the witness conceded that at a discovery deposition questions had been put to her and she

had answered to the effect that the polisher attachments were stored both loose and in cartons on low shelves.

*Elizabeth Neal,* for the defendant:

She is employed by defendant as an assistant department manager. In May, 1966, she was in charge of four departments located in the basement of the store. She was on the floor at all times except for her passes and her lunch. During the time she had worked in the store from 1962, she had gone down to the basement, and during May, 1966, she had worked in the basement. At no time had she ever seen anyone using the sweeper attachments as a skateboard.

OPINION

■■■ It is not questioned that plaintiff's status at the time of the injury was that of a business invitee on defendant's premises. As such, defendant owed him the duty of maintaining the premises in a reasonably safe condition. (*Geraghty v. Burr Oak Lanes, Inc.,* 5 Ill.2d 153, 125 N.E.2d 47.) However, a proprietor is not the insurer of his customer's safety, and a proprietor's negligence cannot be inferred solely from the fact that an accident occurs on his premises. Where a business invitee is injured by slipping on a foreign substance or article on the premises, liability may be imposed if the article was placed there by the negligence of the proprietor or his servants. If the article was on the premises through the act of a third party or if there is no showing as to how it got there, the proprietor can still be held liable if it appears that either he or his servants knew of its presence or if the article had been there a sufficient length of time so that its presence should have been discovered in the exercise of ordinary care. *Donoho v. O'Connell's, Inc.,* 13 Ill.2d 113, 148 N.E.2d 434; *Olinger v. Great Atlantic & Pacific Tea Co.,* 21 Ill.2d 469, 173 N.E.2d 443.

■■ Defendant's first contention, that plaintiff failed to establish a prima facie case of negligence is a meritorious one. The record discloses that plaintiff slipped and fell on a piece of merchandise in defendant's store, thereby sustaining extensive injuries. However, there was no showing as to how the roller-type object came to be on the floor in the aisle, and, therefore, there was not enough evidence to sustain a reasonable inference that the object was present on the premises through the negligent act of defendant or its servants. Such being the case, it became incumbent upon plaintiff to prove that defendant or its servants had actual notice of the presence of the object in the aisle or that the object had been in the aisle for a sufficient period of time so that defendant could be charged with constructive notice of its presence. No actual or implied notice was shown on this record.

In his brief, plaintiff refers to the testimony of Anna Stecyna as if it had been properly admitted for all purposes. However, her testimony as to events 30 days prior to the accident was admitted, on the offer of plaintiff's attorney, only to prove ownership of the attachment articles by defendant, it being conceded to be otherwise irrelevant and therefore not proof of the existence of the conditions described by the witness. Furthermore, although Ann Pishum had acknowledged on cross-examination that in her discovery deposition she had given certain answers as to loose storage of some of the attachments, she never reaffirmed this statement as affirmative testimony at the trial, so it was "not to be given any substantive or independent testimonial value" on the issue of liability. *People v. Newman*, 30 Ill.2d 419, 423, 197 N.E.2d 12.

■■ Plaintiff did not, therefore, meet his burden of proof on the issue of liability, and the court erred in entering a judgment in his favor.

The judgment of the circuit court is reversed.

. Reversed.

DRUCKER, P. J., and LORENZ, J., concur.

### SUPPLEMENTAL OPINION UPON DENIAL OF PETITION FOR REHEARING

Mr. JUSTICE ENGLISH delivered the opinion of the court:

In plaintiff's petition for rehearing, he concedes, in effect, that this court in its opinion may have pointed out the lack of proof in answer to the first two points in his brief (those principally argued), namely, that defendant would be liable

"(1) Where the Object Came To Be in the Aisle Through the Negligence .of the Store or Its Employees;

(2) Where the Store or Its Employees Knew the Object Was in the Aisle or by the Exercise of Ordinary Care Should Have Known It Was There and Failed Either to Remove It or to Warn the Customer of Its Presence."

but that we had "misconstrued the plaintiff's theory of liability in this case" which was really the third point stated in his brief as follows:

"(3) Where the Dangerous Condition Is Foreseeable to the Operator of the Store Because It Is Part of a Pattern of Conduct or . a Recurring Incident—in Which Case, the Injured Patron Need *Not* Prove That the Operator of the Business Establishment Had Either Actual or Constructive Knowledge of the *Specific Item* Which Caused the Injury."

In response we, in turn, will concede that we had not specifically

answered plaintiff's third point (which is a valid principle of law), but do so now, and our answer is the same again—that plaintiff failed to establish his theory by evidence.

Plaintiff does not argue his point as to any proof of a "recurring incident," as there was none, but he does protest that we misconstrued his point (3) in failing to recognize that plaintiff's real theory of liability was that defendant had been engaged in a "negligent manner of merchandising," and that he really had not relied on points (1) and (2) of his appellee's brief.

As an assist to the court in now understanding the theory of negligent merchandising, plaintiff has broken down his point into four parts:

"(1) the roller-type object belonged to Defendant and was being sold by Defendant."

There was no dispute as to this.

"(2) Defendant customarily sold these articles in the very part of the store where the accident occurred."

There was no dispute as to this either.

"(3) at the time of the occurrence, Defendant had its merchandise stacked on low platforms in the aisles where the accident occurred."

Nor was there any dispute as to this if we are to attach the ordinary meaning (as we think we should) to the phrase, "stacked on low platforms *in the aisles.*" See below for further comment.

"(4) these very same items were known to be rolling on the floor in the same part of the store on previous occasions."

As to this part of plaintiff's theory, there was a complete failure of proof which we pointed out in our original opinion and will not repeat here.

In attacking our conclusion in this regard, plaintiff, in his petition for rehearing, quotes from the record (it was not in the abstract and there was no additional abstract filed) one portion of the testimony of Ann Pishum which was not included in the impeachment cross-examination through reference to her prior deposition, and in which he states that she "testified affirmatively" as follows:

"Q. You don't remember them [*sic* the roller objects] right on the shelf, right by the area where you found him?

A. On the shelf in the cartons."

If this is evidence, circumstantial or otherwise, which proves or tends to prove a "negligent manner of merchandising" we will simply have to confess that we do not understand it to be any such thing.

Plaintiff's petition also states that we overlooked part of the cross-examination testimony of David Neesan, an employee of defendant at the time of the occurrence, but later discharged, who was called as a witness

by plaintiff. We think we may be excused for having done so because plaintiff did not consider it of sufficient importance to mention in his brief, nor was it abstracted in the form set forth as follows in plaintiff's petition from which we quote:

> "that the roller-type object was an attachment for vacuum cleaners and that he had seen them there and had handled the stock; that the vacuum cleaners were positioned around the decking back there on the side to where the Plaintiff was and * on that side where he was or across the aisle near the wall—the platform on the bottom. (R. 229) It was also demonstrated that the witness, David Neesan, was present on the day of the occurrence."

Again we demur, and rather think that plaintiff followed the wiser course in omitting this testimony from his argument the first time around.

Probably the greatest difficulty which plaintiff has in searching for and arguing the existence of evidence to support his theory is counsel's imprecise (and, we believe, incorrect) use of the terms "in the aisles" or "on the aisles" in reference to what is claimed to be negligent merchandising. The 20″ x 13½″ photograph introduced into evidence by plaintiff shows that large containers were displayed on low platforms and that this method of display actually formed the aisles, as there were no counters or tables employed apparently on account of the size of the items placed on sale in that department of the store. If the vacuum cleaners, in or out of cartons were displayed "in the aisles" as plaintiff's petition would like us to find, there simply would have been no aisles.**

Consider a theater usher when he looks at your tickets and says that your seats are "in aisle 2." Or, with luck he may use plaintiff's other term and advise you that your seats are in the fifth row "on the aisle." Now, this, we suggest, is the ordinary and accepted use of these words. The usher obviously does not mean in either instance that you are to sit down on the floor of the aisle itself.

Or consider a floor walker at Marshall Field's who tells a prospective customer that she can find diamonds "in" the next aisle. This sort of direction has never, to our knowledge, produced a prospector-type rush

---

* The record does not include the word "and." It states
> "Around that decking back there on the other side to where the man was. I am not certain of this either. On that side where he was or across the aisle by the wall, by the wall—platform on the bottom."

** At the time the photograph was taken there were two large cartons, apparently empty, extending part way into the aisle. There was no evidence that they were there at the time of the occurrence, however, nor is there any claim that they interfered with progress through the aisle or contributed in any way to plaintiff's fall.

to the next aisle in the expectation of scooping up diamonds from the floor of the aisle.

Plaintiff, himself, understood this, we believe, in the following brief colloquy on cross-examination:

"Q. How close was the merchandise *in the aisle* to where you were sitting after you said you fell?" (Emphasis added by us.)

A. It was right along side of me, sir; *right on the platforms* and on the—whatever they are, the display cases." (Emphasis added by counsel for plaintiff.)

We remain of the opinion that the judgment of the trial court should be reversed. The original opinion's recital of the testimony of Anna Stecyna has been somewhat modified without change in its effect. The petition for rehearing is denied.

Opinion modified.

Petition for rehearing denied.

DRUCKER and LORENZ, JJ., concur.