(No. 34461.—

BETTY DONOHO, Appellant, *vs.* O'CONNELL'S, INC., Appellee.

*Opinion filed January 24, 1958—Rehearing denied March 19, 1958.*

114

PERCIVAL THOMPSON, and RICHARD A. LEWIN, both of Chicago, for appellant.

ALBERT M. HOWARD, of Chicago, (CHARLES D. SNE-WIND, of counsel,) for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This court has granted plaintiff, Betty Donoho, leave to appeal from a judgment of the Appellate Court reversing the judgment of the circuit court of Cook County, and directing that judgment be entered for defendant, notwithstanding the jury verdict awarding plaintiff $20,000 as damages for injuries sustained when she slipped on the floor of defendant's restaurant.

The issue in this cause is whether, under the facts and circumstances most favorable to plaintiff, there was any evidence of negligence by defendant in the maintenance of its premises, which could properly be submitted to the jury.

A comprehension of the sequence of events necessitates a review of certain physical features of defendant's premises. Defendant's restaurant at 1112 Wilson Avenue, Chicago, involved herein, has two entrances, both located at the southeast corner of the building: the Wilson Avenue entrance on the south wall, through which plaintiff entered, and one leading to the elevated railway station, on the east wall. Immediately north of the "L" entrance on the east wall is a table, referred to as a "stand-up table," which is approximately 4 feet high, 24 inches wide, and extends from the east wall into the room some 3 feet, so as to form an areaway between the corner entrances and the stand-up table. A grill is located in the south windows along the south wall, and another grill extends along the west wall, half the distance back. Parallel to and in front of this grill along the west wall there is a counter at which are 8 stools for customers. To the east of this counter, and further north so as to be in line with the stand-up table, there are three or four round tables, lower than the stand-up table, and with chairs around them to accommodate customers.

With reference to the circumstances of her fall, plaintiff was the only witness on her own behalf. From her testimony it appears that she was 56 years old and regularly employed as a beauty operator, and that at a little after 7:45 P.M. on June 22, 1954, she entered the Wilson Avenue entrance of defendant's restaurant. There were about 15 customers in the restaurant at the time, including the people at the round tables, and a man standing at the south end of the stand-up table, who was having a sandwich and a cup of coffee. Plaintiff took the only vacant

seat at the counter, which was next to the last seat from the north end of the counter.

Shortly after plaintiff entered, the man at the stand-up table left, and the bus boy removed his dishes, and after plaintiff placed her own order for a hamburger and coffee, a second man took the first man's place at the stand-up table. He also had a sandwich and coffee, and when he left there was no one using the stand-up table or in the vicinity thereof. The bus boy picked up the dishes, cleaned off the table, and then swept in back under the round tables, but, according to plaintiff's testimony, she did not see him sweep in the areaway in front of the stand-up table.

When plaintiff rose to leave, she had been in the restaurant approximately 30 minutes, and more than 15 minutes after the second man left the stand-up table. Intending to leave by the "L" entrance, she walked south from her place at the counter, to the stand-up table, turned in front of it, and took two steps in an easterly direction, when the sole of her foot came in contact with something, and she slipped and fell forward on her left side. She lay on the floor facing south with her feet to the west and her head to the east, about 16 inches from the door leading to the "L" station. When she could not get up, a Mr. Miller and the counter boy picked her up, and sat her in a chair.

Plaintiff testified further that while she was seated there, she observed a piece of partly smashed grilled onion, in the form of a ring about the size of a half-dollar, lying on the floor about two inches from the stand-up table, in the area where she had been. She also noted a dark smear on the floor, about 10 inches long and an inch wide, that looked like grease. When her shoes were taken off at the hospital, there was also a smear about $\frac{3}{4}$ of an inch wide and 3 inches long on the sole and on the side of her left shoe, which started at the center of the sole, and ran up to the toe.

Testifying on behalf of defendant were the night manager, the counter man, and the bus boy at the time of the occurrence, as well as the employee who waited on plaintiff. None of them saw plaintiff fall, but admitted seeing her lying on the floor and helped her to the chair. Nor did they see any onion rings, or any other debris, or food particles, or moisture on the floor; and they all suggested that the mark they saw on the floor, which was about 3 inches in length and about an inch wide, was probably caused by plaintiff's heel.

James Lawler, the employee who waited upon plaintiff, testified further that the floors were swept every hour and were mopped at least 3 times a day, and that he saw the bus boy sweep the floor about 15 minutes before the accident. In describing the way the bus boy cleaned the tables, which he had seen many times, he explained that the dishes are picked up first in a tray, then set down on a chair, or something, while the bus boy uses a damp cloth to clean the table off so that the next customer can eat there.

The bus boy, however, stated that if there is anything on the tables after he removes the dishes, he cleans it off with a wet towel and brushes it into the tray, and also cleans up anything that might be on the floor, such as napkins and food particles. He also claimed he mopped the entire floor about 3:00 P.M., and cleaned the third round table, but not the stand-up table, about 10 minutes before the accident, and that he swept the floor in the vestibule area about 15 minutes before plaintiff fell.

One of the police officers, who arrived at 8:35 P.M. in response to a radio call that a woman had fallen in the restaurant, testified that he did not see anything unusual on the floor, or any skid marks, but that he was not there to investigate the accident, but only to take care of the injured party. The other officer stated that he made no inspection, and no one pointed anything out to him.

On the basis of substantially the foregoing evidence, and the uncontroverted medical testimony, the jury returned a verdict for plaintiff for $20,000, and the judgment entered thereon by the trial court was reversed by the Appellate Court, with directions to enter judgment for defendant notwithstanding the verdict.

In reviewing that judgment we must ascertain from the evidence and inferences most favorable to plaintiff whether the issue of defendant's negligence in the maintenance of the premises should have been submitted to the jury. *Mueller* v. *Elm Park Hotel,* 398 Ill. 60; *Walden* v. *Chicago and North Western Railway Co.* 411 Ill. 378.

The parties do not question or quarrel with the rules of law appertaining herein: That a proprietor owes a business invitee the duty of exercising ordinary care in maintaining the premises in a reasonably safe condition (*Geraghty* v. *Burr Oak Lanes, Inc.,* 5 Ill.2d 153); and that liability will be imposed where a business invitee is injured by slipping on a foreign substance on the premises if it was placed there by the negligence of the proprietor or his servants, or, if there is no showing how the substance got on the premises, if it appears that the proprietor or his servant knew of its presence, or that the substance was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered. (*Davis* v. *South Side Elevated Railroad Co.* 292 Ill. 378.) Thus, where the foreign substance is on the premises due to the negligence of the proprietor or his servants, it is not necessary to establish their knowledge, actual or constructive (*Pabst* v. *Hillmans,* 293 Ill. App. 547); whereas, if the substance is on the premises through acts of third persons, the time element to establish knowledge or notice to the proprietor is a material factor. *Schmelzel* v. *Kroger Grocery and Baking Co.* 342 Ill. App. 501.

In the instant case, plaintiff contends, and defendant denies, that evidence was introduced establishing that the

onion ring was on the floor through the negligence of defendant's servants, and that even if it were deemed to have been dropped by a third person, it was on the floor a sufficient time for its presence to have been discovered by the exercise of ordinary care.

In adjudging these contentions we have examined a significant portion of the wealth of cases involving customers and patrons injured by slipping on foreign substances in stores and other public places where the foregoing rules have been invoked. (162 A.L.R. 949 *et seq.;* 100 A.L.R. 710; 42 A.L.R.2d 1103.) While we are mindful of the dangers of oversimplification by classifying such cases, nevertheless, certain patterns are discernible.

Where the foreign substance upon which the customer slipped was unrelated to the proprietor's operations, the Illinois courts and those of other States have directed verdicts, in the absence of actual or constructive notice, since under such circumstances no inference could be drawn that the substance was more likely to have been dropped by defendant's servants than by third persons. Thus, verdicts were directed in *Davis* v. *South Side Elevated Railroad Co.* 292 Ill. 378, where a patron slipped on a banana peel on a stairway leading from an "L" station; in *Antibus* v. *W. T. Grant Co.* 297 Ill. App. 363, where the customer slipped on a banana peel on the steps leading to the basement of a general merchandise store; in *Michelson* v. *Mandel Brothers, Inc.* 322 Ill. App. 691, where a customer slipped on a soft slippery substance on the stairway of defendant's department store. This same result appears in the cases of other States. *Woolworth Co.* v. *Ney,* 239 Ala. 233, 194 So. 667; *Penny Co.* v. *Kellermeyer,* 107 Ind. App. 253, 19 N.E.2d 882.

In the *Kellermeyer case,* although the court directed a verdict where plaintiff slipped on a loose piece of "wood or cardboard or cellophane," the court, nevertheless, implied that if the foreign substance had been a part of, or

connected with the merchandise sold in the store, it could be inferred that the object had been dropped by defendant or its servants. The court stated at p. 886: "In the instant case the appellee went into the store to purchase a shirt and cap for her husband. * * * As distinguished from the fruit store case, *supra*, there is no evidence in the instant case to the effect that the object on the floor was any part of or in any way connected with the mechandise being sold in the store."

However, even under the circumstances where the foreign substance on which the plaintiff slipped is related to defendant's operations, the courts have not uniformly drawn the inference that the substance got there by the acts of defendant or his servants. Such an inference was made by the Ohio court in *Fox* v. *Ben Schechter & Co.* 57 Ohio App. 275, 13 N.E.2d 730. Plaintiff therein slipped on some partially decaying fruit in defendant's vegetable store, and the court reasoned that, even though there was no evidence as to how the substance got on the floor, since the defendant handled, displayed and sold the fruit, there was a greater likelihood that defendant or his servants, rather than a customer, dropped it on the floor, hence the cause was submitted to the jury. The court recognized, however, that it was also possible that a customer may have dropped it, and stated at p. 732: "It is possible that a customer dropped this grape. That is not the question. The question is whether there is evidence that makes it more probable that defendant dropped it."

Similarly, the Illinois court in *Sundberg* v. *Boal,* 320 Ill. App. 138, inferred from the nature of the substance, a small patch of soap water, on the floor of a beauty shop, that it was dropped by the defendant's employees, since "there was no way reasonably conceivable that soapy water could have been in the aisle other than through the agency of defendant's employees."

However, in *Jones* v. *Kroger Grocery and Baking Co.* 273 Ill. App. 183, and *Schmelzel* v. *Kroger Grocery and Baking Co.* 342 Ill. App. 501, which reaffirmed the *Jones case,* the Illinois courts did not draw the inference that defendant dropped the lettuce leaves on which the plaintiffs fell merely because that product was sold by defendants, where there was no further evidence as to how the substance got on the floor. In those cases, in the absence of constructive notice or knowledge by the defendants of the presence of the substances on the premises, the negligence issue was taken from the jury and verdicts were directed.

The courts of other jurisdictions have also entered directed verdicts under similar circumstances where the foreign substance was related to defendant's business, but no proof was offered other than the presence of the substance and the occurrence of the injury. Thus, in *Kroger Grocery and Baking Co.* v. *Dempsey,* 201 Ark. 71, 143 S.W.2d 564, and in *Girvetz* v. *Boys' Market,* 91 Cal. App.2d 827, 206 P.2d 6, noted by defendant, where the customers in defendants' vegetable departments fell upon banana peels, the Arkansas and California courts both refused to draw the inference that the substance was put there by defendants or their servants, and therefore required notice before allowing the negligence issue to go to the jury. Similarly, in *Wyman* v. *McLellan Stores Co.* 315 Mass. 117, 51 N.E.2d 969, where a customer in a vegetable store stepped on a pea pod, the Massachusetts court, in refusing to submit the negligence issue to the jury, stated: "But even if it could have been found that the pea pod came from the vegetable counter, there was no evidence that it fell from that counter to the floor, or came to the floor in any other way by means of any act or negligence of an employee of the defendant."

Where, however, in addition to the fact that the substance on the floor was a product sold or related to defendant's operations, the plaintiff offers some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises, courts have generally allowed the negligence issue to go to the jury, without requiring defendant's knowledge or constructive notice. Moreover, from our review of the cases, there appears to be a diminishing reluctance by courts to accept such circumstantial evidence to establish that the foreign substance came on the floor through defendant's negligence. 31 N. C. L. Rev. 134.

In *Pabst v. Hillmans,* 293 Ill. App. 547, where plaintiff slipped on a string bean near the vegetable bin which was brimming over, the Illinois court drew the inference that the bean was on the floor through the negligence of defendant's servants, and allowed the negligence issue to go to the jury. The court distinguished the aforementioned case of *Jones v. Kroger Grocery and Baking Co.* on the ground that since it could be inferred in the *Pabst case* that the object on which plaintiff fell was on the floor through the negligence of defendant's servants in filling the bins, notice was unnecessary, whereas in the *Jones case* no such inference could be made, hence, the question of notice became material, and plaintiff therein failed to establish that element.

In *Moone v. Kroger Grocery and Baking Co.* (Mo. App.) 148 S.W.2d 628, where plaintiff slipped on a string bean on the floor in the area between the display counter and the scales, the court inferred that the bean was either dropped by a customer while being carried from the display counter to the scales, which situation should have been foreseen by defendant, or it fell from an overloaded bin;

hence, in either event the condition was created by defendant, and there was no necessity for plaintiff to prove knowledge, actual or constructive, on the part of defendant.

In *Stoddard* v. *Roberts Public Market,* 27 Cal. App.2d 166, 80 P.2d 519, where plaintiff slipped on a wet or slippery spot immediately adjacent to the vegetable market operated by the defendant lessee, the California court inferred from the fact that it was customary for defendant to sprinkle the vegetables from time to time during the day that the wet or slippery condition was created by the negligence of defendant; hence, the issue of negligence was deemed a question for the jury.

The *The Vogue, Inc.* v. *Cox,* 28 Tenn. App. 344, 190 S.W.2d 307, where the plaintiff fell on a pencil found lying near the desk where employees wrote up their sales, which was a vivid yellow in color similar to pencils used by store employees, the Tennessee court inferred that the pencil was on the floor through the negligence of defendant or his servants and allowed recovery.

In *Wood* v. *Walgreen Drug Stores,* (Mo. App.) 125 S.W.2d 534, which bears a close resemblance to the case at bar, the Missouri court allowed the negligence issue to go to the jury where plaintiff slipped on a piece of moist bread on the floor of defendant's restaurant, on the ground that the condition was created by defendant's employee. Plaintiff there testified that the floor was clean around the table when she sat down, that there were fragments of bread upon the table, that the waitress in clearing the table permitted certain fragments to fall upon the floor, that no one other than the waitress had passed by the table while plaintiff was seated there, and that as plaintiff was leaving she slipped on a piece of moist bread, such as had been on the table.

In the light of the foregoing review, which does not presume to be exhaustive, we must consider the evidence

in the instant case, and view it in the aspect most favorable to plaintiff. Accordingly, it appears that she slipped on an onion ring, which left a dark grease mark on the floor and on the sole of her shoe, as she was walking in front of the stand-up table on her way out of defendant's restaurant; that two customers had eaten hamburgers at the stand-up table while she was in the restaurant; that some 15 minutes before plaintiff fell, this portion of the stand-up table had been cleared by the bus boy, who had a practice of clearing the tables by putting the dirty dishes on a tray, which he would set on a chair while he wiped the debris off the counter with a damp cloth, so that particles could drop to the floor; and that no one else had since been at the counter, or in the particular area.

Thus, it is evident that this is not a case where the foreign substance on which plaintiff slipped was unrelated to defendant's operations, as in *Davis* v. *South Side Elevated Railroad Co.* and *Antibus* v. *W. T. Grant Co.*, cited by defendant, for grilled onions were frequently included with hamburgers served by defendant, and hamburgers had been eaten at the stand-up table. Nor is this a case where plaintiff has merely offered evidence of slipping on a fragment of a product sold by defendant, as in *Jones* v. *Kroger Grocery and Baking Co.* and *Schmelzel* v. *Kroger Grocery and Baking Co.*, and similar cases in other jurisdictions, also cited by defendant. On the contrary, plaintiff has not only presented evidence that the foreign substance was closely related to defendant's operations, as stressed in the *Kellermeyer case,* and as deemed determinative of defendant's negligence in *Fox* v. *Schechter & Co.,* but has presented additional circumstantial evidence that the onion ring on which she slipped was located beside the stand-up table cleared by the bus boy, that under the bus boy's practice of clearing up the tables food particles could drop to the floor, and testimony that after the bus boy cleared the stand-up table, no one else ate there or was in that area for some 15

minutes before plaintiff fell. Proof of the smear on the sole of the left shoe when it was examined at the hospital is corroborative of plaintiff's claims. From this circumstantial evidence, it could be reasonably inferred that it was more likely that the onion ring was on the floor through the act of defendant's servant, than by the acts of any customer.

As emphasized in *Fox* v. *Schechter & Co.*, the query is not whether it was also possible that a customer could have dropped the onion ring, but whether the evidence makes it more probable that defendant or his servants dropped it.

Admittedly, the evidence for plaintiff is not as persuasive as in *Wood* v. *Walgreen Drug Stores* where the plaintiff testified that she saw the waitress brush the particles of bread on the floor; nor is the evidence as negligible as in the *Jones case,* where plaintiff merely offered evidence that she slipped on a piece of spinach, and where there were no circumstances from which it could be inferred how the spinach got on the floor.

We are mindful that conflicting evidence was adduced. However, it is not the province of this court to consider or weigh the conflicts, or determine to whom credence should be given, in reviewing the propriety of judgment notwithstanding the verdict.

Under our view, the negligence issue was properly submitted to the jury by the trial court, and the Appellate Court, in directing that judgment notwithstanding the verdict be entered, was in error, and its judgment is reversed and the cause is remanded to the Appellate Court, with directions to consider other issues.

*Reversed and remanded, with directions.*