Sara M. Welch, Plaintiff-Appellee, v. Paulson's Enterprises, Inc., a Corporation, Defendant-Appellant.

Gen. No. 69–70.

Second District.

December 19, 1969.

Rehearing denied January 28, 1970.

O'Brien, Burnell, Puckett & Barnett, of Aurora, for appellant.

Reid, Ochsenschlager, Murphy & Hupp, and George P. Lindner, of Aurora, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The plaintiff, Sara Welch, was awarded damages of $5,000 in a jury trial in the Circuit Court of Kane County for injuries suffered by her as a result of a fall as she left the defendant's place of business.

On July 20, 1965, the plaintiff, then a widow 52 years of age, had been shopping with a woman friend and stopped at a tavern and restaurant operated by the defendant at the intersection of Douglas and Highland Avenues in Elgin. The two women entered the tavern at approximately 7:30 p. m. by way of an entrance on Highland and sat at a table near the bar, where they had two drinks each. The bar was crowded and dimly lit and they decided to eat at another restaurant.

As they began to leave, the friend returned to the table for her sweater and the plaintiff went on ahead through an exit on Douglas Street. The Douglas exit is through an inner door into a foyer or hallway and then through an outer door out to the street. There was no artificial lighting in the foyer but there was an octagonal window in the outer door. Immediately beyond the outer door was a step down to the sidewalk level. The intersection itself is in the business section of town and was well lighted. As the plaintiff stepped through the outer door onto the step she fell down, face first, onto the sidewalk and suffered serious and painful injuries.

The complaint, filed on July 19, 1967, alleged that the defendant had "negligently permitted one of the

184

exits to be and remain improperly lit and negligently failed to warn patrons leaving the premises, including the plaintiff, of certain steps in said dimly lit area . . . ." After the trial, the complaint was amended by leave of court to include the additional allegation that the defendant "negligently permitted a step at its west entrance and exit-way to become and/or remain in a defective condition. . . ."

The defendant moved for a directed verdict at the close of the evidence for the plaintiff and again at the close of all the evidence. Both motions were denied and the jury returned with a verdict in favor of the plaintiff and assessed her damages in the sum of $5,000. On appeal, the defendant maintains that the cause should not have been submitted to the jury since there was insufficient evidence of negligence or that the negligence, if any, was the proximate cause of the plaintiff's injuries.

■■ It is undisputed that the owner or operator of of a restaurant or tavern is not an insurer of his customers' safety but must exercise reasonable care to keep the premises in a safe condition. Donoho v. O'Connell's, Inc., 13 Ill2d 113, 118, 148 NE2d 434. The liability of the defendant for the plaintiff's injuries could only be predicated, therefore, on its proven negligence. Lubin v. Goldblatt Bros., Inc., 37 Ill App2d 437, 441, 186 NE2d 64; Olinger v. Great Atlantic & Pacific Tea Co., 21 Ill2d 469, 473, 173 NE2d 443.

For the most part, the evidence introduced at the trial was uncontradicted. The defendant admits that there were no warning signs at the Douglas exit and that the foyer had no artificial light. The plaintiff admits that Douglas Street itself was "well lighted." In her complaint, the plaintiff claims that the defendant was negligent in its failure to light the foyer or to warn patrons of the step beyond the outer door. The plaintiff testified on direct examination as follows:

185

"Mr. Lindner: Q. All right, so you opened the first door and then entered this little cubicle area that you told us about, right?

"A. Right.

"Q. Could you describe to the jury what the lighting was like in this cubicle area between the two doors?

"A. I would say it was dimly lighted.

"Q. And what did you do after you go into that area? What was your next move?

"A. Opened the other door.

"Q. And before you opened that door, did you see any signs of any warning whatsoever on that door?

"A. No, I didn't.

"Q. And can you tell us what you did then as you opened the second door?

"A. As I opened the door there was a little threshold there, I would say maybe there was that much step (indicating). I stepped out on to the step, but —It was pretty light outside there with the street lights and everything.

"Q. All right. And did you then step out onto the outside step?

"A. Yes."

On cross-examination, she testified:

"Q. I understand. But you testified to the jury, there is no doubt that that doorway outside was well lighted?

"A. Outside, yes. In fact, very brightly.

"Q. And you saw the step when you stepped on it?

186

"A. Well, I don't know. I opened the door.

"Q. And you saw the step?

"A. I—

"Q. And stepped?

"A. I didn't know the step was rough, I guess.

"Q. I didn't ask you that, Mrs. Welch. You did see the step and you stepped on it, isn't that right ma'am?

"A. Yes.

"Q. Isn't that right?"

 Even if the failure to light the foyer or provide warning of the step was negligence on the part of the defendant, it is clear that it was not the proximate cause of the plaintiff's fall since she had passed through the foyer, and saw the threshold and stepped out onto it before she fell. Therefore, the plaintiff failed to maintain her cause of action on either of those two points.

The complaint further alleged that the defendant was negligent in that it permitted the step "to become and/or remain in a defective condition when it knew, or reasonably should have known, that to allow such step to remain in such a defective and rough condition would cause harm to the plaintiff and others using said entrance and exitway."

The plaintiff was the only witness to testify as to the condition of the step. She stated as follows on direct examination:

"Q. What did you notice when your foot hit that step?

"A. I was at the step and it seemed to me sort of rough; I felt my foot slip.

187

"Mr. Puckett: I object.

"The Court: What is the objection?

"Mr. Puckett: I object, it's a conclusion of the witness.

"Mr. Lindner: Judge, she can tell how it felt on her foot as she slipped.

"The Court: Overruled.

"Mr. Lindner: Q. Will you tell us what happened then, Mrs. Welch?

"A. Well, it just felt like my foot slipped and my ankle turned and down I went, face first."

On cross-examination, the plaintiff further testified:

"Q. And it's your feeling now that your foot slipped?

"A. Right.

"Q. All right. Is it also a fact that you thought that your ankle turned at that time?

"A. Well, it just seemed like it, yes.

"Q. All right. And down you went?

"A. That is right."

 The testimony that the step "seemed . . . sort of rough" or was "rough" was not, in our opinion, sufficient to establish that it was defective or unsafe. Thus, after considering all the evidence in the case at bar, in the aspect most favorable to the plaintiff, we find that this evidence so overwhelmingly favors the defendant that no contrary verdict based on this evidence could ever stand. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 510, 229 NE2d 504.

Under the circumstances, we agree with the defendant that it was improper to submit the cause to the jury and therefore remand it to the trial court with directions to vacate the judgment and to enter judgment notwithstanding the verdict in favor of the defendant.

Reversed and remanded with directions.

DAVIS and SEIDENFELD, JJ., concur.