VIOLET M. WIND et al., Plaintiffs-Appellants, v. HY-VEE FOOD STORES, INC., Defendant-Appellee.

Third District   No. 3—94—0631

Opinion filed May 10, 1995.

Francis Van Hooreweghe, of Van Hooreweghe & Fackel, of Moline, for appellants.

Carol Freeman and Jodi K. Plagenz, both of Lane & Waterman, of Rock Island, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiffs, Paul and Violet Wind, brought this action to recover for injuries which occurred when Violet slipped and fell on a floor mat in a store owned by the defendant, Hy-Vee Food Stores, Inc. (Hy-Vee). The circuit court of Rock Island County instructed the jury on the burden of proof applicable when a condition on the defendant's premises causes the plaintiff's injury. The jury returned a verdict for Hy-Vee. The plaintiffs appeal, contending that the trial court should

have instructed the jury to determine whether Hy-Vee's acts or omissions caused Violet's injuries. We agree. Therefore, we reverse and remand.

## I. FACTS AND PROCEDURAL BACKGROUND

On the morning of November 23, 1991, the weather was snowy and wet in Rock Island. Consistent with its usual practice during inclement weather, Hy-Vee employees placed several floor mats near the main entrance of its Rock Island store before opening for business. The mats have rubber undersides and edges. They were placed at the entrance to prevent customers from tracking water into the store. Later that morning, the plaintiffs arrived at the store to shop. As they left the store, Violet was injured when she tripped on the edge of one of the mats and fell to the floor.

On May 14, 1993, the plaintiffs filed a two-count complaint against Hy-Vee. Count I sought damages for Violet's injuries. Count II sought damages for Paul's loss of Violet's services and consortium. The complaint alleged in pertinent part:

"7. That as a direct and proximate result of the negligent failure in placing and maintaining the floor mat of the defendant, its agents, servants and employees, plaintiff tripped and fell with great force and violence onto the floor, thereby incurring severe and permanent injuries.

8. That the defendant, by its agents and employees was guilty of one or more of the following careless and negligent acts or omissions:

(a) Failed to warn invitees of the presence of the curled up floor mat, which was improperly maintained.

(b) Failed to keep the premises in a safe condition for the invitees thereon.

(c) Failed to timely repair or remove the defective floor mat when they knew or should have known of the danger to the invitee, such as the plaintiff.

9. That when conducting the activities and business on the defendant's property, the defendant carelessly and negligently placed improperly maintained and defective mats on said premises, which caused the plaintiff to stumble and fall ***."

The cause proceeded to trial on May 2, 1994. Paul testified that he complained to Hy-Vee employees about the condition of the floor mats on two or three occasions prior to the accident. Paul said that portions of the mats' rubber edges were torn away on the occasions when he complained. He also said that the corners or edges of the mats were curled and raised away from the floor at times. He testified that he has never seen a mat fastened in any way to the floor at

Hy-Vee's store. Paul said that after he registered his complaints, he sometimes saw Hy-Vee employees shift or straighten the mats. He said the mat on which Violet fell was missing portions of its edges and was raised up from the floor. Paul observed that no tape was on the mat and nothing secured the mat to the floor.

Flossie Martin testified she saw one mat at the store with its edges curled up from the floor. After she witnessed several people stumble over the mat's edges, she complained to a Hy-Vee employee. The mat was later removed. On several occasions prior to the accident, she saw mats which were wrinkled and buckled. Moreover, the mats often moved and shifted when people walked on them.

Violet testified she was walking normally throughout the store prior to the accident. When she stepped into the entrance, she looked down and saw her toe under one of the floor mats. She lost her balance as she tried to pull her foot from under the mat. She fell forward onto the floor, injuring her left knee.

Steven Quinn is an assistant manager for Hy-Vee. He said the mats were placed by the entrance when he arrived for work at about 5:30 or 6 a.m. The mats were fastened to the floor on all four sides with a clear strapping tape at that time. Quinn said that Hy-Vee has no written policy regarding the installation or maintenance of floor mats. He testified that managers are responsible for the placement of the mats and must also monitor their condition. He said that employees are instructed to keep the entrance area clean and clear of debris. Quinn said that worn-out or torn mats are regularly discarded.

Timothy Brusek is also an assistant manager for Hy-Vee. He was one of the supervisors on duty when Violet fell. He corroborated Quinn's testimony that Hy-Vee lacks a written policy pertaining to floor mats. He said that floor maintenance depends on the needs of the particular store and is left to the managers' discretion and judgment. Hy-Vee employees are instructed to contact a manager upon receiving complaints from customers. However, Brusek said he never received any complaints from customers about the mats, nor did any employees inform him of such complaints.

Brusek said that the mats were rolled up and stored when not in use. He said that when the mats are installed, sometimes the edges of the mats curl up due to being rolled and stored over time. On those occasions, the edges of the mats are usually fastened to the floor with tape.

On the day of the accident, Brusek saw the mats in the store's entrance at about 7 a.m. The mats were lying flat to the floor at that time. Later that morning, he attended to Violet after her fall. At that time, Brusek noticed that an edge of the mat on which Violet

fell was raised from the floor slightly. He could not remember whether the mat had been taped to the floor that day.

At the close of evidence, both parties tendered various jury instructions to the court. The plaintiffs contended at trial that Hy-Vee's negligent placement and maintenance of the floor mats were activities conducted on Hy-Vee's property. The plaintiffs argued that Hy-Vee's acts or omissions were the proximate cause of their injuries. Therefore, they proposed an instruction explaining that a landowner must exercise reasonable care for the safety of persons lawfully on his property. (See Illinois Pattern Jury Instructions, Civil, No. 120.03.01 (3d ed. 1994) (hereinafter IPI Civil 3d).) The plaintiffs also offered an instruction setting forth the burden of proof applicable when the defendant's acts or omissions are alleged to be the cause of the injuries. The instruction provides that the plaintiffs are required to prove the following elements: (1) the defendant acted or failed to act in a negligent manner; (2) the plaintiffs were injured; and (3) the defendant's acts or omissions were the proximate cause of the plaintiffs' injuries. See IPI Civil 3d No. B21.02.

On the other hand, Hy-Vee maintained throughout the trial that the mats were a condition on its premises which constituted an open and obvious hazard. Therefore, Hy-Vee offered an instruction (Hy-Vee's instruction) which sets forth a higher burden of proof for the plaintiffs. In addition to the elements contained in IPI Civil 3d No. B21.02, Hy-Vee's instruction provided that the plaintiffs had to prove the following propositions in order to impose liability on Hy-Vee: (1) a condition on the property presented an unreasonable risk of harm to persons on the premises; (2) the defendant knew or should have known of this condition; and (3) the defendant should have anticipated that persons would not discover the danger or would otherwise fail to protect themselves against it. (See IPI Civil 3d No. B120.09.) Over the plaintiffs' objection, the trial judge refused the plaintiffs' proposed burden of proof instructions and read Hy-Vee's instruction to the jury.

During its deliberations, the jury submitted the following written question to the judge: "Do all six criteria have to be met? or. . . Does only one or more have to be met?" The trial judge directed the jury to refer to the instructions. Shortly thereafter, the jury returned a verdict for Hy-Vee.

On May 31, 1994, the plaintiffs filed a post-trial motion. In their motion, the plaintiffs argued that the trial judge erred when she gave Hy-Vee's instruction and refused their proposed instructions. The trial court denied the motion on August 31, 1994. The plaintiffs filed a notice of appeal that same day.

## II. DISCUSSION AND ANALYSIS

## A. APPLICATION OF ORDINARY NEGLIGENCE ANALYSIS

The plaintiffs contend that Hy-Vee negligently installed and maintained the floor mats on its premises. Therefore, they claim that an ordinary negligence analysis must be applied to the facts of this case. The plaintiffs insist that they were not required to prove the additional elements contained in Hy-Vee's instruction. For these reasons, the plaintiffs contend that the trial judge committed error when she gave Hy-Vee's instruction to the jury. We agree with the plaintiffs' analysis.

Litigants are entitled to have the jury instructed on the legal principles applicable to the facts of the case. (*Alden Press, Inc. v. Block & Co.* (1988), 173 Ill. App. 3d 251, 260, 527 N.E.2d 489, 493.) The purpose of jury instructions is to convey to the jurors the correct principles of law applicable to the evidence. (*Gaskin v. Goldwasser* (1988), 166 Ill. App. 3d 996, 1009, 520 N.E.2d 1085, 1092.) The test of a jury instruction's propriety is whether it fairly and accurately states the law. (*Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 568, 449 N.E.2d 211, 215.) The trial court's failure to give correct instructions on applicable legal principles is error. *Edwards v. Hill-Thomas Lime & Cement Co.* (1941), 378 Ill. 180, 189-90, 37 N.E.2d 801, 805; see also *Winn v. Inman* (1983), 119 Ill. App. 3d 836, 840-41, 457 N.E.2d 141, 144-45.

In *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, our supreme court formally adopted section 343 of the Restatement (Second) of Torts (Restatement (Second) of Torts § 343 (1965)) as the law in Illinois. The *Genaust* case sets forth the duties and liabilities of landowners for open and obvious conditions on the land as follows:

> " 'A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.' " (*Genaust*, 62 Ill. 2d at 468, 343 N.E.2d at 472, quoting Restatement (Second) of Torts § 343 (1965).)

Consequently, Illinois courts have recognized that landowners are not liable to business invitees for injuries arising from known and obvious hazards on the land. See, *e.g.*, *Auguste v. Montgomery Ward & Co.* (1993), 257 Ill. App. 3d 865, 868, 629 N.E.2d 535, 538; *Stach v.*

*Sears, Roebuck & Co.* (1981), 102 Ill. App. 3d 397, 407, 429 N.E.2d 1242, 1249.

However, a different analysis for assessing the scope of a landowner's liability applies when a substance has been placed on the premises by the landowner. In *Donoho v. O'Connell's, Inc.* (1958), 13 Ill. 2d 113, 148 N.E.2d 434, the supreme court outlined the principles which determine a landowner's liability for a foreign substance placed on his premises. Liability is imposed on the landowner if the plaintiff can show that the substance was placed on the premises through the defendant's negligence. (*Donoho*, 13 Ill. 2d at 118, 148 N.E.2d at 437-38.) If the plaintiff shows the substance is related to the defendant's business *and* offers some slight evidence that the defendant or his servants, rather than a customer, placed the substance on the floor, then the court will allow the jury to consider the issue of the defendant's negligence without requiring proof of the defendant's actual or constructive notice. (*Donoho*, 13 Ill. 2d at 122, 148 N.E.2d at 439.) In such cases, a landowner owes a business invitee a duty to exercise ordinary care in maintaining the premises in a reasonably safe condition. *Thompson v. Economy Super Marts, Inc.* (1991), 221 Ill. App. 3d 263, 265, 581 N.E.2d 885, 888; *Piper v. Moran's Enterprises* (1984), 121 Ill. App. 3d 644, 652, 459 N.E.2d 1382, 1388; see also *Roberson v. J.C. Penney Co.* (1993), 251 Ill. App. 3d 523, 526, 623 N.E.2d 364, 366.

In *Piper*, the defendant operated a grocery store. The employees stacked some of the goods for sale onto wooden pallets. The employees were instructed to move the goods forward so that customers would not have to stand on the pallets. The plaintiff could not reach the items she wanted and was not offered assistance. The items she desired had not been moved forward, thereby exposing portions of the pallets. She stepped through a hole in one of the pallets and was injured.

The Fifth District Appellate Court held that the pallet constituted neither a latent defect nor an open and obvious danger which the plaintiff ought to have recognized. Instead, the court employed the ordinary negligence analysis set forth in *Donoho*. First, the *Piper* court examined the defendant's conduct in placing the pallet on the floor of its store. Next, the court looked to whether the defendant was on notice of the exposed pallet and the length of time the pallet was exposed. The court engaged in these inquiries in light of the defendant's duty to maintain its premises in a reasonably safe condition. *Piper*, 121 Ill. App. 3d at 652, 459 N.E.2d at 1388; see also *Donoho*, 13 Ill. 2d at 118-22, 148 N.E.2d at 437-40.

The *Piper* court noted that the pallet was part of the defendant's business and was placed on the floor by the defendant's employees. The employees were instructed to prevent the pallet's exposure by moving goods forward on the pallet. Damaged pallets were to be removed from the store. The court in *Piper* held that the plaintiff was not required to prove the defendant's actual or constructive notice because the pallet's exposure was probably caused by the defendant's negligence. For these reasons, the issue of the defendant's negligence was properly submitted to the jury. *Piper*, 121 Ill. App. 3d at 652-53, 459 N.E.2d at 1389; accord *Rutzen v. Pertile* (1988), 172 Ill. App. 3d 968, 978-79, 527 N.E.2d 603, 610.

■ We find the reasoning in *Donoho*, *Piper* and *Rutzen* to be particularly persuasive in analyzing the facts of the instant case. Here, there is no question that the floor mats were related to Hy-Vee's business. Hy-Vee employees installed the mats by the entrance during inclement weather to prevent customers from tracking water into the store. Hy-Vee employees were instructed to maintain the mats and to discard ripped or damaged mats. Furthermore, some evidence suggests that Hy-Vee negligently installed the mats. Testimony in the record indicates that the mats were usually taped to the floor. However, a significant amount of testimony also indicates that the mats were *not* fastened to the floor on the day of the accident. Additionally, some evidence suggests that the mats were poorly maintained and in poor condition on the day of the accident. The record also contains evidence suggesting that Hy-Vee was on notice of the mats' condition. For the reasons given, we conclude that the evidence requires application of the analysis set forth in *Donoho* and *Piper*.

However, Hy-Vee insists that if the floor mats were in poor condition, they constituted known and obvious hazards. Therefore, according to Hy-Vee, the rule expressed in *Genaust* applies to this case. Hy-Vee argues that it is not liable for such "conditions" on its premises. We cannot agree with Hy-Vee's contention.

In support of its argument, Hy-Vee cites *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223. However, *Ward* stands for the following propositions: (1) a business invitee's failure to observe and avoid an obvious condition is a proper factor to be considered in assessing the invitee's comparative negligence; and (2) a landowner always owes a duty of reasonable care to a business invitee, regardless of the landowner's limited liability for known hazards and obvious conditions on the property. (*Ward*, 136 Ill. 2d at 143-47, 554 N.E.2d at 228-29.) Nothing in *Ward* supports Hy-Vee's assertions that the rule in *Genaust* must be applied here.

■ Next, Hy-Vee conceded at oral argument that the placement of the mats was an "activity" conducted on its property. However, Hy-Vee asserts that the mats became a "condition" on its property immediately after their installation. Hy-Vee argues that unless the accident occurred *during* the installation of the mats, liability cannot arise through such an activity. As a result, Hy-Vee again urges us to apply the rule in *Genaust*. Hy-Vee has presented no authority which supports its analysis. Similarly, we have not located any such case law through our exhaustive research. Moreover, we have found nothing in the reported decisions of this State to refute our conclusion that *Donoho* and its progeny govern the result in the case at hand.

Finally, Hy-Vee argues that the plaintiffs' complaint alleges the existence of a condition on the premises. We cannot agree. A cursory examination of the complaint reveals that it states a cause of action in plain negligence. Paragraph five of the complaint alleges Hy-Vee's duty to exercise reasonable care for business invitees. Paragraph six alleges the floor mats were improperly maintained. Paragraph seven alleges Hy-Vee negligently installed and maintained the mats. Paragraph eight assigns liability to Hy-Vee for the following acts or omissions: (1) failure to warn of the mats' presence; (2) failure to maintain the premises; and (3) failure to repair or remove the floor mats. We find nothing in the complaint which asserts Hy-Vee's liability for a "condition on the premises" as outlined in *Genaust* and its progeny.

We conclude that liability may arise from Hy-Vee's alleged negligent acts or omissions when it installed and maintained the floor mats. Nevertheless, Hy-Vee's instruction set forth the liability of a landowner as expressed in *Genaust* and section 343 of the Restatement (Second) of Torts. Consequently, Hy-Vee's instruction was not a fair and accurate statement of the applicable law. The plaintiffs' instructions correctly stated the law which applies in the case at hand. Accordingly, we hold that the trial court erred when it gave Hy-Vee's instruction instead of the plaintiffs' instructions.

## B. PREJUDICE RESULTING FROM IMPROPER JURY INSTRUCTION

The plaintiffs contend they suffered prejudice when the trial court gave Hy-Vee's jury instruction and refused their proposed instructions. We agree.

A new trial will be granted where a party shows that its right to a fair trial has been seriously prejudiced by the denial of an instruction. (*Wade v. City of Chicago Heights* (1991), 216 Ill. App. 3d 418, 423, 575 N.E.2d 1288, 1292.) The trial court's failure to give proper jury instructions is reversible error when the evidence is conflicting

or the facts are closely balanced. (*Sims v. Chicago Transit Authority* (1955), 7 Ill. App. 2d 21, 30, 129 N.E.2d 23, 27; see also *Winn*, 119 Ill. App. 3d at 840, 457 N.E.2d at 144.) Prejudice results when the court fails to instruct the jury on an issue reasonably presented by the evidence. *Ellig v. Delnor Community Hospital* (1992), 237 Ill. App. 3d 396, 408, 603 N.E.2d 1203, 1211.

■ Here, the record is replete with sharply conflicting testimony on several issues regarding the conduct of Hy-Vee's employees and the condition of the mats. Following our careful review of the record, we conclude that the evidence was closely balanced and created several issues of fact. The determination of these issues turns on an evaluation of the witnesses' credibility and the weight to be given their testimony. These are questions for the jury's determination. (*Cates v. Kinnard* (1994), 255 Ill. App. 3d 952, 955, 626 N.E.2d 770, 772.) Also, the evidence at trial squarely presented the issue of whether Hy-Vee was negligent when it installed and maintained its floor mats.

The jury's written question to the trial judge during deliberations also indicates prejudice to the plaintiffs. In its question, the jury sought the judge's guidance in interpreting the plaintiffs' burden of proof. For these reasons, it is clearly evident from the record that the jury based its verdict on Hy-Vee's instruction. Therefore, we conclude that the jury's reliance on the improper instruction caused prejudice to the plaintiffs.

Correct instructions containing accurate statements of the law are essential to a fair trial. Accordingly, the plaintiffs have demonstrated that the improper jury instruction seriously prejudiced their right to a fair trial. We base our decision on Hy-Vee's instruction which stated inapplicable legal principles and on the sharply conflicting testimony contained in the record. See *Winn*, 119 Ill. App. 3d at 840, 457 N.E.2d at 144; *Sims*, 7 Ill. App. 2d at 30, 129 N.E.2d at 27.

## III. CONCLUSION

We conclude that the trial court erred when it gave Hy-Vee's proposed jury instruction. Also, we conclude that the erroneous jury instruction caused serious prejudice to the plaintiffs' right to a fair trial as a result of the conflicting nature of the evidence presented in the record. Accordingly, the judgment of the circuit court of Rock Island County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

LYTTON and HOLDRIDGE, JJ., concur.