2024 IL App (1st) 230986-U

FIRST DISTRICT,
FIRST DIVISION
March 28, 2024

No. 1-23-0986

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| AMBER HINES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 2019 L 012092 |
| | ) | |
| WSC-GSP CT HOLDINGS VII, LLC, a | ) | Honorable |
| Limited Liability Company; Able Engineering | ) | Preston Jones, Jr., |
| Management Co., LLC, a Limited Liability | ) | Judge Presiding. |
| Company; GlenStar Asset Management, LLC a | ) | |
| Limited Liability Company; Crown Energy | ) | |
| Services, Inc. d/b/a Able Engineering Services, | ) | |
| Inc., a Corporation; and The Millard Group, | ) | |
| Inc., a Corporation d/b/a Millard Maintenance, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1     *Held*: Circuit court's granting of summary judgment in favor of four defendants is affirmed where there was no genuine issue of material fact as to whether defendants had notice of or created the allegedly dangerous condition.

¶ 2     The plaintiff, Amber Hines, appeals from the trial court's order granting summary judgment in favor of four defendants: WSC-GSP CT Holdings VII, LLC ("WSC"), GlenStar Asset

Management LLC ("GlenStar"), Crown Energy Services, Inc. d/b/a Able Engineering Services ("Able"), The Millard Group, Inc. d/b/a Millard Maintenance ("Millard"), and Universal Protection Services d/b/a Allied Security Services ("Allied") [1], for injuries sustained when she fell in a building stairwell on June 4, 2018. The basis of the trial court's ruling was that plaintiff failed to present any evidence "showing when (or if) the stair strip at issue became loose or dangerous prior to her fall" or that the defendants had actual or constructive notice of a dangerous condition. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4        Continental Towers is an office complex in Rolling Meadows, Illinois. On June 4, 2018, WSC was the owner of the Continental Towers and GlenStar managed the property. WSC contracted with Millard to provide janitorial services, Allied to provide security services, and Able for engineering services. The Continental Towers complex included three towers, each with 14 levels, a three-level commercial building in the center of the towers, and a four-level exterior garage. Each tower had two stairwells, "blue" and "yellow," on the east and west side of the tower. In accordance with village code requirements, metal luminescent tread strips were installed on the leading edge of each step in the stairwells throughout the Continental Towers, approximately 1,500 to 2,000 in total. Each tread strip was affixed to the stair with screws.

¶ 5        Catherine Carlson was employed by GlenStar as the general manager and vice president for the Continental Towers complex from 2002 until 2021. Tenants of the complex reported issues or problems through a "work order system" or by calling into the management office. Work orders were typically "called out" via two way radio to the proper party for corrective action. Despite routinely using the stairs to reach other floors in both towers, and as a form of exercise "three to four days a week," Carlson never observed "any unsafe condition[s]," including loose tread strips

_____

[1] Plaintiff does not challenge the trial court's order granting summary judgment in favor of Allied.

or "slip hazards," in the stairwells. And other than plaintiff, Carlson was unable to recall any reports of someone falling on the stairs.

¶ 6        Chief Engineer James Williams was employed by Able and "responsible for the safe and efficient operation of mechanical equipment in the building, maintaining it, operating it, and the staff that does that." During walkthroughs of the stairwells conducted every month for fire safety purposes, Able engineers checked the stair tread strips and fixed treads that "needed to be addressed." Millard's contractual duties were limited to providing "cleaning services" in the building. Charlene Troy, vice president of operations for Millard, testified that it is "highly unlikely" that mopping would cause a tread strip to lift off the step. Bojan Raskovic and Carlos Martinez, supervisors with Millard, never experienced a tread strip moving or lifting while mopping the stairs.

¶ 7        Plaintiff worked for Ceannate Corporation from 2016 until December 2018. Ceannate was located in the Continental Towers the entire time plaintiff was an employee. Ceannate moved to offices on the eighth and ninth floor in Tower 2 sometime in early 2018. Plaintiff, who worked on the ninth floor, walked down the stairs to the eighth floor "at least once a day." Although she was aware "the stairs were problematic" for approximately three to six months prior to her fall, she never shared her concerns with building maintenance or her supervisor. Plaintiff was not aware of a "specific problem with the tread" she tripped on.

¶ 8        At about noon on June 4, 2018, plaintiff was in the yellow stairwell of Tower 2 walking from the eighth floor to the ninth floor. She took a "hop" to "get [her]self going" up the steps. On the third step, her toe "caught onto the metal strip" and she fell onto her right knee and right hand. After falling, plaintiff stood up, rubbed her knee, and walked back to her office. Sometime later, plaintiff began experiencing pain in her knee. She told her supervisor she had fallen and was taken by ambulance to the hospital. Plaintiff returned to work the next day. About a month later, she

went back and looked "at the condition of the stair [she] fell on." She observed "the metal strip on the third tread separated from the tread itself."

¶ 9          Josh Noyes, the director of security for Allied, walked up and down the stairs at issue and took photos of the stairwell "either that day [of the fall] or the next day." Noyes did not notice anything "that would cause alarm." Engineer Patrick Murphy also examined the stair treads from floors 7 to 11 in both stairwells of Tower 2 two days after plaintiff's fall and found nothing wrong with the tread strips.

¶ 10         On November 1, 2019, plaintiff filed an action to recover damages against WSC based on claims of negligence and premises liability. The complaint alleged that WSC negligently installed and maintained the metal strips, failed to warn of the hazard posed by the strips, and failed to repair loose and protruding strips, proximately causing "severe and permanent injuries" to plaintiff. Plaintiff further alleged that WSC "knew or should have known of the defective or dangerous condition of the interior stairway" and should have reasonably expected "that people lawfully on the property would not discover or realize the danger." A second amended complaint was filed on March 9, 2021, adding claims of negligence and premises liability against Able, GlenStar, Allied, and Millard.

¶ 11         All of the defendants subsequently filed motions for summary judgment. Allied argued, *inter alia*, that there was no evidence it owed a duty to plaintiff as a "third-party security services contractor whose personnel played no maintenance role in the building." Able argued that there was no evidence showing that it had "actual or constructive notice" that the metal strips constituted a "tripping hazard" or that the stair tread was in a defective condition due to Able's negligence. WSC and GlenStar also alleged a lack of evidence showing actual or constructive notice or that they failed to use "ordinary care in maintaining the premises." Millard asserted that it had no "duty to inspect, fix, or find broken stairs," owed no duty to plaintiff, and that plaintiff's fall was not

caused by any "act or omission" of Millard.

¶ 12　　On December 21, 2022, the trial court granted summary judgment in favor of each defendant and against plaintiff. The trial court agreed that plaintiff had failed to present sufficient evidence of defendants' actual or constructive notice of a defective condition. Regarding Able, the court found that plaintiff "cannot say what cause[d] the stair strip at issue to allegedly become dangerous, nor for how long prior to her fall that condition existed." As to WSC and GlenStar, the court found that plaintiff "fail[ed] to show that the stair strip existed in a defective condition prior to her fall, let alone for a significant time." Concerning Allied, even "[s]etting aside the issue of an existence of a duty," plaintiff failed to show constructive notice of the existence of a defective condition. With respect to Millard, the court found that plaintiff "failed to present evidence showing when (or if) the stair strip at issue became loose or dangerous prior to her fall." Plaintiff filed a motion to reconsider, which the trial court denied.

¶ 13　　　　　　　　　　　　　　II. ANALYSIS

¶ 14　　On appeal, plaintiff challenges the trial court's order granting summary judgment in favor of WSC, GlenStar, Able, and Millard which we review *de novo*. *Johnson v. Armstrong*, 2022 IL 127942, ¶ 31. "The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). For the granting of a motion for summary judgment to be proper, the pleadings, depositions, and admissions on file, together with the affidavits, if any, must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c). "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed, or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. In evaluating whether a genuine issue of material fact exists, a

court construes the evidence in the light most favorable to the nonmoving party and strictly against the moving party. *Johnson*, 2022 IL 127942, ¶ 31.

¶ 15      Plaintiff argues that "[e]vidence exists in the record from which reasonable jurors could infer that Defendants had constructive notice of the dangerous condition of the stairwell." Alternatively, plaintiff argues that "by simply finding a lack of constructive notice, the circuit court erred in granting summary judgment" because she presented evidence that "the acts or omission of Defendants were negligent and directly caused or contributed to the dangerous condition that injured" her.

¶ 16      In a negligence action, the plaintiff must plead and prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Carney v. United Pacific R.R. Co.*, 2016 IL 118984, ¶ 26. "Although plaintiff is not required to prove his or her case at the summary judgment stage, he or she must present some evidentiary facts to support the elements of the claim." *Helms v. Chicago Park District*, 258 Ill. App. 3d 675, 679 (1994). Where the plaintiff fails to establish an element of the cause of action from "the papers on file," summary judgment for the defendant is proper. *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). It is well settled that "[l]iability cannot be based on guess, speculation, or conjecture as to the cause of the injury." *Newsom-Bogan v. Wendy's Old Fashioned Hamburgers of New York, Inc.*, 2011 IL App (1st) 092860, ¶ 16. In other words, " 'mere speculation, conjecture, or guess is insufficient to withstand summary judgment.' " *Milevski v. Ingalls Memorial Hospital*, 2018 IL App (1st) 172898, ¶ 27 (quoting *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999)).

¶ 17                                A. Negligence

¶ 18                            1. *Premises Liability*

¶ 19    Plaintiff argues that she established negligence on the part of the defendants under a theory of premises liability. Business owners owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them. *Olinger v. Great Atlantic & Pacific Co.*, 21 Ill. 2d 469, 473 (1961); *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006). In addition to the elements of ordinary negligence, a claim of premises liability requires proof of three additional elements: "[(1)] that there was a condition on the property that presented an unreasonable risk of harm, [(2)] that the defendant knew or reasonably should have known of the condition and the risk, and [(3)] that the defendant could reasonably have expected people on the property would not realize, would not discover, or would fail to protect themselves from the danger." *Garcia v. Goetz*, 2018 IL App (1st) 172204, ¶ 31. "Generally, an employee's knowledge of a dangerous condition *** on the premises is sufficient to impute notice to a defendant employer, because an employee has a responsibility either to correct the unsafe condition *** or report the problem to *** superiors." *Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1065-66 (2001).

¶ 20    A defendant "has constructive notice of all conditions discoverable by reasonable inspection of the premises." *Lombardo v. Reliance Elevator Co.*, 315 Ill. App. 3d 111, 120 (2000). "Constructive notice may be proven by demonstrating that a condition existed for an extended period of time and the defendant could therefore have discovered the condition 'through the exercise of reasonable care.' " *Heider v. DJG Pizza Inc.*, 2019 IL App (1st) 181173, ¶ 34 (quoting *Lombardo*, 315 Ill. App. 3d at 120). Whether a defendant is deemed to have constructive notice of the existence of a dangerous condition is generally a question of fact. *Smolek v. K.W. Landscaping*, 266 Ill. App. 3d 226, 229 (1994). If the plaintiff is able to "present any evidence tending to show constructive notice, summary judgment is not appropriate and the case should proceed to trial." *Heider*, 2019 IL App (1st) 181173, ¶ 34.

¶ 21    In this case, plaintiff argues that the defendants did not exercise "ordinary care in their inspection and maintenance of the stairwell" and that, if they had, "they could have and should have found that the metal strip at issue was raised and loose." But the record contains no evidence tending to show that the defective stair condition "persisted long enough that the defendant[s] should have discovered the condition through the exercise of reasonable care." *Lombardo*, 315 Ill. App. 3d at 120. For example, despite frequently using the Tower stairwells, Catherine Carlson never observed any safety hazards, including loose tread strips; Millard and Able employees never noticed anything defective about the stair tread that plaintiff tripped on when they were in the stairway; Able engineer Patrick Murphy examined the stair treads from floors 7 to 11 in both stairwells of Tower 2 two days after the incident but "didn't find anything wrong with any of [the tread strips]"; and Josh Noyes, Allied's director of security, walked up and down the stairs at issue and took photos "either that day [of the fall] or the next day" but did not find anything "that would cause alarm."

¶ 22    Although Able's repair logbook reflects 10 repairs to the stairs in both towers between March 16, 2016, and May 19, 2018, none of those repairs involved the tread plaintiff tripped on. Able's logbook entries do not show that any maintenance being performed on this tread between June 4, 2018, the date of the fall, and June 11, 2018. In addition, GlenStar's work order documentation does not show any work orders for the tread strips in the stairway where plaintiff was injured in 2018.

¶ 23    Plaintiff used the stairwell daily, including earlier on the day she fell, but never had a "problem with that particular step" prior to June 4, 2018. Similarly, Michael Jackson, one of plaintiff's colleagues at Ceannate, used the same stairwell "[a]lmost every day" but never noticed a strip that posed a tripping hazard.

¶ 24        Plaintiff argues that the facts of this case are "most like" the facts of *Villarreal v. Lederman*, 93 Ill. App. 3d 976 (1981). In *Villarreal*, the plaintiff was injured when she tripped and fell on a metal strip installed in the stairway of an office building owned by defendants. *Id.* at 977. On her way up the stairs, the plaintiff noticed that the steps were "very narrow," that the metal strips on each step "were not 'firmly tacked down,' " and that the strips "were loose under foot." *Id.* While traveling back down the same stairway, her right shoe caught on the "sixth or seventh step from the bottom" and she fell. *Id.*

¶ 25        At trial, both defendants testified as adverse witnesses that a banister was added when they purchased the building five years earlier, but the stairs were otherwise "in good repair." *Id.* at 977-78. They never received any complaints "about loose metal strips" or noticed the metal strips were loose. *Id.* at 978. There were "no prior falls on the staircase." *Id.*

¶ 26        Plaintiff's expert witness testified that, based on his 39 years of construction and design experience, the stairway was "hazardous" for various reasons, including:

> "the aluminum nosing (metal strip) tends to be slippery and causes falls. Such nosing should be installed only on a stairway wider than the present one so that a person may step on the tread with the ball of the foot in the flat position rather than in an inclined position. The stairway also was dangerous because such nosing could not be fastened properly to the stair tread after wear occurs." *Id.*

¶ 27        After plaintiff rested, the trial court denied defendants' motion for a directed verdict. *Id*. The jury ultimately returned a verdict in favor of the plaintiff and against the defendants. *Id.*

¶ 28        On review, this court found that the trial court had properly denied defendants' motion for a directed verdict because "plaintiff presented sufficient evidence to warrant submission of the matter to the jury." *Id*. In reaching this decision, we recognized that plaintiff's testimony regarding the condition of the stairs was corroborated by expert testimony of "the existence of an unsafe or

defective condition" that "had existed for a sufficient length of time to charge defendants with constructive notice of the condition." *Id.* at 979.

¶ 29    Unlike in *Villarreal*, the evidence in this case was not corroborated by expert testimony. Evidence that plaintiff tripped on the step and screenshots and photos of the steps taken months after the accident occurred (depicting the photographer manipulating the metal strip) do not establish that a defective condition existed prior to the fall, much less that "the defective condition had existed for a sufficient length of time to charge defendants with constructive notice of the condition." *Villarreal*, 93 Ill. App. 3d at 979. On the contrary, the testimony of Carlson, Noyes, Murphy, and plaintiff herself directly refuted plaintiff's claim that the metal strip was defective for any time prior to (or after) her fall.

¶ 30    Plaintiff argues that "the trial court granted summary judgment before [she] had an opportunity to present her expert to corroborate and support her testimony." Notably, plaintiff failed to attach an expert affidavit in response to defendants' summary judgment motions. Although plaintiff filed a "Witness Disclosure Pursuant to Supreme Court Rule 213(F)(3)" on October 6, 2022, listing an "architect expert," "the conclusions and opinions of the witness and the bases therefor" were not disclosed. Ill. S. Ct. R. 213(f)(3)(iii). As previously discussed herein, "mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Milevski*, 2018 IL App (1st) 172898, ¶ 27.

¶ 31    Even viewed in the light most favorable to plaintiff, the evidence is insufficient to establish that the stair tread existed in a dangerous condition for long enough that the defendants could have discovered the condition "through the exercise of reasonable care." *Lombardo*, 315 Ill. App. 3d at 120. Since plaintiff failed to establish that defendants had actual or constructive notice of a dangerous condition, the trial court properly granted summary judgment in favor of the defendants on plaintiff's premises liability claims.

¶ 32                          2. "*Direct Common Law Negligence*"

¶ 33        Plaintiff also argues that the trial court erred in dismissing her claims of direct negligence against the defendants because she was not required to establish that defendants had notice of unreasonable risk of harm in the stairwell. Relying on *Donoho v. O'Connell's Inc.*, 13 Ill. 2d 113 (1958), *Mueller v. Phar-Mor, Inc.*, 336 Ill. App. 3d 659 (2000), *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712 (1998), *Wind v. Hy-Vee Food Stores, Inc.*, 272 Ill. App. 3d 149 (1995), and *Piper v. Moran's Enterprises*, 121 Ill. App. 3d 644 (1984), plaintiff asserts that where, as here, some evidence is offered "to support an inference that the defendants' negligent acts or omissions produced the condition that caused the injury," summary judgment should be denied.

¶ 34        Defendants argue that plaintiff has waived this argument by failing to raise it in the trial court. We disagree. Plaintiff's March 9, 2021, amended complaint included claims against each defendant alleging multiple "careless and negligent acts and/or omissions" in installing, maintaining, inspecting, and repairing the metal tread strips.

¶ 35        In *Donoho*, the plaintiff was injured when she slipped and fell on an object on the floor of the defendant restaurant. *Donoho*, 13 Ill. 2d at 116. The plaintiff testified at trial that, after her injury, she observed a partly smashed grilled onion lying on the floor and a smear of grease in the area where she fell. *Id.* After being taken to the hospital, the plaintiff also observed a smear on the sole of her shoe. *Id.* No one else observed the grilled onion, but restaurant employees testified to the cleaning procedures at the restaurant and testified that the mark on the floor was most likely from the plaintiff's shoe. *Id.* at 117. The jury returned a verdict in favor of the plaintiff, but the appellate court reversed and ordered the trial court to enter a judgment notwithstanding the verdict in favor of the defendant restaurant. *Id*. at 118.

¶ 36        Our supreme court found that the evidence presented at trial indicated that the foreign substance was closely related to the restaurant's business and that based on the circumstances

surrounding plaintiff's fall, including the location of the onion, the employees' cleaning practices, the fact that no one ate in the area after the bus boy cleared it, and the smear on the sole of the plaintiff's shoe, it was more probable that one of the restaurant's employees dropped the onion than a customer. *Id.* at 124-25.

¶ 37    The facts and holding of *Donoho* are inapposite to the facts of this case. Plaintiff argues that the *Donoho* rule applies here because the tread strip was on WSC/GlenStar property and related to the defendants' businesses and there was no evidence that plaintiff or a third party caused damage to the tread strip. These assertions are insufficient to remove the issue of notice from the analysis. See *Milevski*, 2018 IL App (1st) 172898, ¶ 34.

¶ 38    The *Donoho* rule has typically been applied to situations where a foreign object has been left on the floor of a business premises. See *Reed*, 298 Ill. App. 3d at 714 (plaintiff stepped on a rusty nail sticking out of a wooden pallet placed by the defendant store); *Wind*, 272 Ill. App. 3d at 151 (plaintiff slipped on floor mat in defendant grocery store); *Piper*, 121 Ill. App. 3d at 646 (plaintiff fell while stepping on a wooden pallet in the defendant's store). Even where it has been applied to a condition, rather than a dropped object, "the [*Donoho*] rule has still been interpreted to require that the business owner *created* the condition." (Emphasis in original). *Milevski*, 2018 IL App (1st) 172898, ¶ 34; see also *Mueller*, 336 Ill. App. 3d at 662 (plaintiff was struck by an electric sliding glass door after defendant store removed a glass side panel).

¶ 39    In this case, plaintiff's injury was not caused by a foreign object dropped on the stairs, nor is there any evidence that defendants "created the condition," beyond installing the strips required by Illinois law. Accordingly, we are not persuaded by plaintiff's reliance on *Donoho* and find plaintiff's failure to present evidence of notice dispositive. See *Milevski*, 2018 IL App (1st) 172898, ¶ 34.

¶ 40                                    III. CONCLUSION

¶ 41          For the reasons stated, we affirm the judgment of the circuit court of Cook County granting

summary judgment in favor of defendants.

¶ 42          Affirmed.