**John Dziewatkowski, Plaintiff-Appellant, v. City of Chicago, a Municipal Corporation, et al., Defendants-Appellees.**

**Gen. No. 52,003.**

First District, First Division.

April 21, 1969.

Rehearing denied May 29, 1969.

William Jakofsky, Paulson & Ketchum, of Chicago (H. Tim Hoffman and Thomas J. Mack, of counsel), for appellant.

Raymond F. Simon, Corporation Counsel of City of Chicago (Marvin E. Aspen and RocLyne E. LaPorte, Assistant Corporation Counsel, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiff appeals from a jury verdict and judgment in favor of the defendant, City of Chicago, in plaintiff's personal injury action for damages based on the alleged negligence of the defendant in the maintenance of its sidewalks. Other defendants were dismissed out of the case and are not involved here. On appeal, plaintiff asserts a prejudicial trial error and improper jury instructions.

In November or December, 1959, the defendant City dug up a parkway on Thomas Street to install a new lighting system and left a mound of clay and dirt on the parkway adjoining the sidewalk. On January 12, 1960, at about 7:15 p. m., after visiting a candy store on the northwest corner of Pulaski and Thomas, plaintiff started to walk west on Thomas. It was drizzling or raining lightly, and the sidewalk was wet. He fell in the middle of the sidewalk and injured his ankle. He was unable to get up, and his hands were wet and had clay on them. A passing stranger helped him into the store and from the store to plaintiff's home. Plaintiff testified that the dirt on the parkway was close to and higher than the sidewalk, and the rain was washing it off. He saw no puddles on the parkway. The streetlights on the corner were dim, and there was "just a very little light." He had lived in the area for several years prior to the occurrence and passed by this area two days before. He had never seen clay on the sidewalk at any time before the occurrence and did not know how it got there.

The owner of the candy store, Dorothy Wolff, testified that a mound of clay and dirt had been left on the parkway after the installation of a new lighting system. On January 12, 1960, plaintiff was helped into the store, and she wiped mud off his pants leg. The evening was foggy, and after plaintiff left she looked at the sidewalk and "the concrete was alright. It was covered with clay and

407

mud." She did not see the exact or actual place where plaintiff fell.

Arthur Gordon, defendant and owner of the building alongside of the sidewalk, testified that the parkway had been dug up by the City to install electric lights on Thomas Street in November or December of 1959. The men were working in the parkway for approximately three days. They filled in the hole and, at his request, the men stamped down the earth, after which it was a little higher than the sidewalk. Each day after the men quit working, Gordon swept the sidewalks. He didn't remember if he saw any clay on the sidewalk on January 12, 1960. He had never seen any water standing in puddles on the sidewalk after a rainfall.

Defendant's witnesses included: (1) A City engineer and technician in charge of the sidewalk division of the Department of Streets and Sanitation, who testified at length as to the inspection and maintenance of the sidewalks and streets of Chicago. He said it would be virtually impossible for the sidewalk inspectors to cover their entire districts, but they did supervise the construction of new sidewalks and investigated public complaints. He had checked the records of the Street Department and found no complaint for the sidewalk in question on January 12, 1960. (2) John Ponzio, the person who helped plaintiff into the candy store, and who lived in the neighborhood, testified that on the night of the occurrence he was walking east on Thomas Street and passed a man who was walking west. He heard a sound and turned around and saw plaintiff down on the sidewalk. He helped plaintiff into the candy store, and he had no trouble in keeping his footing. It was a warm night, and he did not recall seeing any clods of dirt on the sidewalk in the immediate area where the plaintiff fell.

Upon stipulation, a U. S. weather report for January 11 and 12, 1960, was read into the record, and it showed record-breaking rains on the 11th and 12th.

Considered first is plaintiff's contention that the jury was improperly instructed. At the outset defendant maintains that plaintiff failed to make specific objections to the questioned instructions at the conference on instructions, and that the instructions were improperly preserved in the record.

The record includes a transcript of two extended conferences between court and counsel in an effort to agree upon instructions to be given to the jury. Without further discussion we find that the instructions were finally made a proper part of the record for consideration on review. Also, we find that objections to the questioned instructions which plaintiff made during the conferences and in his motion for new trial were sufficiently specific to inform the trial court of their basis and to preserve them for review.

The first instruction of which plaintiff complains is instruction No. 16:

> "You are instructed that the slipperiness of a sidewalk occasioned by rain or clay, not being accumulated so as to constitute an obstruction to travel, is not such a defect as will make a City liable for damage caused thereby."

Plaintiff contends that the statement of law contained in this instruction was specifically rejected in Graham v. City of Chicago, 346 Ill 638, 178 NE 911 (1931). There the City was held liable for damages resulting from an overflow of water from the flooding of a skating rink and the court pointed out that liability must rest on the distinction as to whether or not the snow or ice causing the injury resulted from natural causes. On page 643, it is said:

> "It is the generality of a situation resulting from natural causes that gives rise to the rule. Without that generality there would be no reason for the rule. There is no more cause for excusing a city

from liability where damages have accrued from ice which has formed on a walk in an unnatural way, than there is to excuse it from damages when a walk has been permitted to become defective from any other cause. . . . The city's liability did not arise from the mere flooding of the sidewalk, but from its neglect to remove the ice which had formed there in an artificial way and its omission to make the place reasonably safe after notice of the dangerous condition."

And at page 644:

"Many cases have been cited which deal with ice formed on sidewalks by the freezing of water from down-spouts. In those cases it was not claimed that liability arose from diverting the flow of rainfall, but the charge of liability was made against the municipalities because ice had formed in an artificial and unnatural way and the city had neglected to make the condition reasonably safe."

From Graham, plaintiff argues that "liability does not depend on whether or not an obstruction exists. The basis of liability is found in the distinction between slipperiness resulting from natural causes and slipperiness artificially created by a city's negligence. This distinction between artificial and natural causes without regard to amount of accumulation was reaffirmed by the Illinois Supreme Court in Riccitelli v. Sternfeld, 1 Ill2d 133, 115 NE2d 288 (1953)."

Defendant argues that it must be determined if there was any evidence that the rain or clay was present on the sidewalk through artificial means, and that the evidence proved that on January 12, 1960, there was a record-breaking rainfall of 2.76 inches. Therefore, "any water that was on the sidewalk where the plaintiff fell was obviously the result of this record breaking rainfall and the

410

city is not responsible for failure to anticipate a cloud-burst and the havoc it wrought." Defendant further argues that in the instant case it would seem to stretch the duty of the City beyond reasonable bounds to hold it liable in the instance where a record-breaking rainfall saturates dirt on a parkway, thereby converting it into mud which was carried upon the sidewalk by the rain just fallen, and "contrary to plaintiff's allegation, there is no evidence in the record from which it could be concluded that the rain or the dirt was present on the sidewalk by artificial means."

Plaintiff's next complaint concerns instruction No. 19:

"The jury are instructed that if you find from the evidence that the accident was caused by the plaintiff slipping on account of the slippery condition of the sidewalk in question, and that said slipping was the proximate cause of the plaintiff's injuries, if any, then you are instructed to find the defendant, City of Chicago, not guilty."

Plaintiff argues that instruction No. 19 exempts the City from the duty of maintaining the sidewalks in a reasonably safe condition by excusing it from liability for injuries proximately caused by a slippery condition which "was artificially and negligently or wilfully caused by the city." On instruction No. 19, plaintiff's authorities include Hubbard v. City of Wood River, 244 Ill App 414 (1927), where the court affirmed a judgment for plaintiff for injuries received when he slipped on sidewalk ice resulting from water ejected from a city pipe. There the court said, at page 417:

"Some of the cases cited hold that a city may be held liable if the ice is in hillocks or ridges but not if it is smooth. It is difficult to perceive the justice of applying this distinction in case of ice formed from water cast upon the walk by artificial conditions.

411

A conductor pipe casting water onto a walk where it will freeze must, of necessity, render the walk defective, and it would seem that it should make no difference in the liability of the municipality whether, at the particular time, the ice was smooth or rough, *assuming that the condition was a dangerous one.*" [Emphasis supplied.]

At page 418:

"This is not a case where all of the sidewalks of the city were icy because of freezing rain or snow. We cannot agree with those cases which hold that where water is cast upon a sidewalk, as in this case, and freezes, there may be a liability if it forms into hills or ridges but no liability if the ice so formed is smooth. In a case of the same general nature we held the city liable."

Defendant argues that plaintiff cites a series of cases in which a plaintiff was awarded damages, but in each of those cases the defendant had artificially caused the dangerous icy condition. Defendant asserts that plaintiff presented no evidence that the slippery condition was artificially created by the defendant City, and "it is clear that instruction No. 19 was a correct statement of the law where the facts of the instant case disclosed that the presence of the rain and dirt was the result of natural causes, and where there was no evidence of notice to the City of the condition."

The final instruction complained of by plaintiff is instruction No. 20:

"The law imposes upon cities the duty to exercise reasonable care to keep its streets and sidewalks in reasonably safe condition for use by persons travelling thereon, themselves exercising ordinary care

412

for their own safety; the city is not an insurer against injuries received by reason of defects in its streets or sidewalks. If it maintains them in a reasonably safe condition, it is not liable, and, in this case, if you believe from all the facts and circumstances, shown by the evidence that the place where the plaintiff claims to have been injured, was in such condition for travel thereon, or thereover, that a person while in the exercise of ordinary care for his own safety, would have passed safely over, then the defendant is not liable in this case."

Plaintiff argues that the jury was told that they must find for the defendant City if there was no defect *in* the sidewalk, as "the city is not an insurer against injuries received by reason of defects *in* its streets or sidewalks." Plaintiff asserts there were no allegations in the complaint or answer or evidence which suggested "a defect *in* the sidewalk." [Emphasis supplied.] Thus the jury was allowed to focus on an item not in issue. In support, plaintiff cites Welch v. New York, C. & St. L. R. Co., 5 Ill App2d 568, 126 NE2d 165 (1955), at page 576:

"The peremptory instruction was properly refused, because there was no evidence upon which to base any conclusion that plaintiff failed to operate properly the hand brake. . . . Instructions must be based upon evidence."

Plaintiff also cites Garvey v. Chicago Rys. Co., 339 Ill 276, 171 NE 271 (1930), where it is said (p 287):

"Where an instruction selects one item of evidence, or one fact disclosed by the evidence, and states that a certain conclusion does not follow as a matter of law from that fact, it is calculated to mislead and confuse the jury. . . . The principles thus clearly

413

laid down in these authorities constrain us to say that in the light of the facts of the present record the giving of instruction 35 was reversible error."

As to instruction No. 20, defendant argues that it does not seem possible that the jury could understand the questioned portion—"the city is not an insurer against injuries received by reason of defects *in* its streets or sidewalks" [Emphasis supplied]—as a directive for defendant if no defect exists in the sidewalk. Defendant asserts that the jury was told that the City was not an insurer of or absolutely liable for injuries, but rather had a duty to maintain reasonably safe conditions.

■ In considering plaintiff's contention that the three questioned instructions were prejudicially erroneous, we note that fundamentally they were peremptory instructions in character and to be considered within the guidelines set forth in Duffy v. Cortesi, 2 Ill2d 511, 119 NE2d 241 (1954), where it is said (p 515):

"The trend of judicial opinion reveals a reluctance to reverse cases on the ground of technical errors in instructions; hence, courts have reiterated that the instructions will be considered as a whole, and where the jury has not been misled, and the complaining party's rights have not been prejudiced by minor irregularities, such errors will not be deemed grounds for reversal. . . . Where, however, the instruction is peremptory in character and directs a verdict for either party, it must necessarily contain all the facts and be complete within itself; it cannot be cured by any other instruction in the series. . . . Moreover, it is deemed harmful and serious error where a peremptory instruction assumes facts not in evidence, and incorrectly interprets the law."

■■ It is our conclusion, based upon the above discussed cases, that if a municipal corporation causes something to be done either on or adjacent to a sidewalk,

414

which results in clay or some other material being washed onto the sidewalk so that it becomes slippery and consequently dangerous, even though the sidewalk has no defect *in it*, the situation is within the rule that the municipal corporation is liable for improper formations caused in "an artificial and unnatural way." The liability of the City does not depend on evidence of "hillocks or ridges" or "an obstruction to travel." Therefore, using these guidelines, we hold that the giving of instructions Nos. 16 and 19 was prejudicially erroneous. As to instruction No. 20, we find it prejudicially erroneous in this case because of the possibility that the jury might have considered literally the phrase "defects in its streets or sidewalks" and concluded that the defect must be "in" the sidewalk rather than an improper condition upon the sidewalk.

Plaintiff's final contention is that the court prejudicially erred in admitting the testimony of defendant's engineer and technician in charge of the sidewalk division. Plaintiff argues that the testimony as to 13,000 linear miles of sidewalks in Chicago and only six sidewalk inspectors, which showed that it was virtually impossible for the sidewalk inspectors to cover their districts, was not admissible as bearing on the degree of care required or bearing on the City's notice of the dangerous condition. Plaintiff asserts that the evidence that the City had caused the work to be done on the parkway was unchallenged. Therefore, the defendant City had notice of the condition in which the work was left, and a municipal corporation which causes work to be done which could be dangerous to the public is bound to take notice of the condition in which it is left, whether safe or dangerous. Cited in support is City of Chicago v. Johnson, 53 Ill 91 (1869), where the court affirmed a judgment for a plaintiff when he fell into a ditch. There the court said no notice was necessary to the City authorities "as they caused the ditch to be made." See, also, Code v. City of

415

East St. Louis, 158 Ill App 494 (1910) ; Village of Jefferson v. Chapman, 127 Ill 438, 20 NE 38 (1889).

Plaintiff further argues that the admission of the testimony as to linear mileage and number of inspectors was clearly prejudicial to plaintiff, as a necessary implication to the jury of the admission of such testimony was that the standard of care required of the City may be less where there are so many sidewalks to be inspected by so few inspectors.

As to the testimony of defendant's engineer, defendant contends that the question of whether the City had notice of the condition of the sidewalk prior to the occurrence was properly before the court, and that this testimony established that the City had no actual knowledge of the condition, either by inspection or public complaint.

■■ We consider the testimony of the City engineer to have been prejudicially erroneous here. The statistics could have had some impact on the jury adverse to the plaintiff on the degree of care and diligence required of a City in keeping its sidewalks in a reasonably safe condition. We find that the City, having caused the work to be done on the parkway prior to the occurrence, had notice of the parkway's condition and its proximity to the sidewalk.

For the reasons given, the judgment in favor of the defendant City of Chicago is reversed and the cause is remanded for a new trial consistent with the views expressed herein.

Reversed and remanded with directions.

ADESKO, P. J. and BURMAN, J., concur.