(No. 76839

DEVRA WAGNER, Plenary Guardian of Estate of Troy Wagner, a Disabled Person, Appellee, v. THE CITY OF CHICAGO, Appellant.

*Opinion filed May 18, 1995.*

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal and Benna Ruth Solomon, of counsel), for appellant.

Mark S. Grotefeld and Martha J. Burns, of Chicago, and Corey L. Gordon, of Minneapolis, Minnesota, all of Robins, Kaplan, Miller & Ciresi, for appellee.

Jack O'Malley, State's Attorney, of Chicago (Karen A. Covy and William P. Pistorius, Assistant State's Attorneys, of counsel), for *amicus curiae* County of Cook.

Beth Anne Janicki, of Springfield, for *amicus curiae* Illinois Municipal League.

JUSTICE NICKELS delivered the opinion of the court:

Defendant, the City of Chicago, appeals from a verdict for the plaintiff, Devra Wagner, plenary guardian of the estate of Troy Wagner, and against the city. Plaintiff brought suit in the circuit court of Cook County against the city for injuries suffered in an accident on the city's street. The city appealed, claiming, *inter alia*, that section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1985, ch. 85, par. 3—102(a)) precluded any liability on its part. The appellate court affirmed (254 Ill. App. 3d 842), and we granted the city's petition for leave to appeal (145 Ill. 2d R. 315). We affirm.

Plaintiff was severely injured on July 24, 1985, when his motorcycle collided with a vehicle driven by Paul Roszkowski at the intersection of Ashland and Rosehill

Streets in Chicago. Roszkowski had turned left from Clark onto Rosehill and was proceeding through the intersection at the time of the collision.

Plaintiff brought suit against both Roszkowski and the city, and later settled with Roszkowski. The suit against the city went to trial and the jury found the city negligent in failing to post a "no left turn" sign on the left side of Clark where Roszkowski had turned onto Rosehill. However, the jury apportioned 50% of the fault to plaintiff. Thus, damages were reduced 50% to approximately $2,155,000. The city appealed and the appellate court affirmed. After allowing the city's petition for leave to appeal, we allowed the Illinois Municipal League and Cook County to file briefs as *amici curiae.*

On appeal, the city argues that section 3—102(a) of the Act precludes any imposition of liability in this case. Section 3—102(a) provides:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used ***." (Ill. Rev. Stat. 1985, ch. 85, par. 3—102(a).)

The city argues that there can be no liability without a duty (see *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 421), and that it owed no duty to plaintiff to maintain its property in a reasonably safe condition. Specifically, the city argues it owed no duty to plaintiff under section 3—102(a) because: (1) plaintiff did not use ordinary care; and (2) plaintiff was not an intended and permitted user of the street. In arguing this, the city asserts that the legislature's intent in enacting section 3—102(a) was to make the defense of contributory negligence applicable in suits against municipalities.

## Waiver

Before we address the city's arguments, we first address plaintiff's argument that the city has waived any appeal on the issue of section 3—102(a). Plaintiff argues that the city failed to assert the defense of contributory negligence at trial and in its first post-trial motion. The issue was first raised in the city's second post-trial motion, which the trial court refused to consider. Plaintiff then argues: "It is well settled that governmental tort immunity under the Tort Immunity Act must be raised and pled as an affirmative defense or else it is waived. (Ill. Rev. Stat. 1991, ch. 110, par. 2—613)." (*Martin v. Chicago Housing Authority* (1994), 264 Ill. App. 3d 1063, 1075.) Moreover, as a general rule, any issue not raised at the trial court level is waived. (*Fawcett v. Reinertsen* (1989), 131 Ill. 2d 380, 386.) Plaintiff finally notes that not only did the city fail to raise this defense, it tendered an instruction for comparative negligence.

The city responds by arguing that this court may consider its appeal because: (1) while the matter was not raised in the trial court until the second post-trial motion, the appellate court decided the issue; (2) at the time of the trial, the only law on this area was the appellate court decision in *Palladini v. City of East Peoria* (1985), 134 Ill. App. 3d 345, which held that section 3—102(a) embraces comparative negligence, thus preventing the city from even raising the claim; and (3) this court may hear any waived matter, as waiver is a barrier to the parties, but not the courts.

We briefly note that plaintiff does not specifically argue that the city has waived its second argument, that it owed no duty because plaintiff was not an intended or permitted user of the street. However, the city did not even raise this issue in its petition for leave to appeal. Nonetheless, we choose to address these issues. As noted recently by this court:

"The rule of waiver is, of course, a limitation on the parties and not the courts. (*In re Marriage of Sutton* (1990), 136 Ill. 2d 441, 446.) In the exercise of its responsibility for a just result and the maintenance of a sound and uniform body of precedent, a reviewing court may consider issues not properly preserved by the parties. (*Jackson Jordan, Inc v. Leydig, Voit & Mayer* (1994), 158 Ill. 2d 240, 251.)" (*Geise v. Phoenix Co. of Chicago, Inc.* (1994), 159 Ill. 2d 507, 514.)

We find it proper to address these issues for the maintenance of a sound and uniform body of precedent.

### Ordinary Care

The city first argues that it owed no duty to plaintiff because section 3—102(a) provides that local governments have no duty to maintain their property for the benefit of persons who are not exercising ordinary care for their own safety. The city notes that plaintiff, having been found 50% at fault, was not acting with ordinary care. The city further argues that the legislature intended to codify contributory negligence in section 3—102(a). This court's rejection of contributory negligence in favor of comparative negligence in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, the city argues, had no effect on section 3—102(a).

At issue is the meaning of the following language in section 3—102(a): "a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people ***." (Ill. Rev. Stat. 1985, ch. 85, par. 3—102.) This issue was first addressed by the appellate court in *Palladini*, which found that the duty of a city to maintain its property was a general duty and that principles of comparative negligence applied to actions under section 3—102(a). Shortly after, another appellate decision, *Risner v. City of Chicago* (1986), 150 Ill. App. 3d 827, 831, noted *Palladini* with approval.

The next decision to address this question, however, *Thompson v. County of Cook* (1991), 222 Ill. App. 3d 459,

rejected the *Palladini* decision. *Thompson* was later affirmed by this court on different grounds. There, this court specifically noted that none of the issues dealing with section 3—102(a) needed to be addressed at that time. (*Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 384.) A Federal decision chose to rely on *Thompson* rather than *Palladini*. See *Dolder v. Martinton Township* (7th Cir. 1993), 998 F.2d 499.

The rules of statutory construction are well known. In construing statutes:

"[The court must] ascertain and give effect to the true intent and meaning of the legislature. (*Hernon v. E.W. Corrigan Construction Co.* (1992), 149 Ill. 2d 190, 194.) In this endeavor, courts should look first to the statutory language (*Hernon,* 149 Ill. 2d at 194), for the language of the statute is the best indication of the legislature's intent (*Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24, 51). Where the meaning of an enactment is unclear from the statutory language itself, the court may look beyond the language employed and consider the purpose behind the law and the evils the law was designed to remedy. (*Antunes v. Sookhakitch* (1992), 146 Ill. 2d 477, 484.) Where, however, the language of a statutory provision is clear, the court must give it effect (*West v. Kirkham* (1992), 147 Ill. 2d 1, 6) without resorting to other aids for construction (*People v. Boykin* (1983), 94 Ill. 2d 138, 141)." *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.* (1994), 158 Ill. 2d 76, 81.

While the city argues that the plain meaning of section 3—102(a) is that the city owes a duty *only* to those using ordinary care, this is not the only plausible interpretation of the section. The phrase "for the use in the exercise of ordinary care of people" may also be read as modifying the phrase "a reasonably safe condition," thus defining a reasonably safe condition and limiting the amount of care a municipality must exercise. Under this interpretation, a reasonably safe condition is one in which a person using ordinary care would not be injured, as opposed to one in which no injury could ever

occur. While the statute may be read both ways, a review of this area of law reveals the latter interpretation to be proper.

We first note:

"Despite the doctrine of sovereign immunity, [Illinois] municipalities traditionally have been liable for injuries caused by unsafe conditions of property, particularly streets and sidewalks, said to be held in a proprietary capacity. In most respects the duty formulated in section 3—102(a) appears to be a restatement of the common law duty of municipalities respecting such property." (Baum, *Tort Liability of Local Governments and Their Employees: an Introduction to the Illinois Immunity Act*, 1966 U. Ill. L.F. 1012.)

This court has also noted that section 3—102(a) codifies a municipality's general duty at common law to maintain its property in a reasonably safe condition:

"This limitation on the scope of the duty in section 3—102(a) is in keeping with the scope of that duty as it existed at common law. The Tort Immunity Act creates no new duties but merely codifies those existing at common law. [Citations.] At common law, a municipality had a duty to maintain its property in a safe condition ***." *West v. Kirkham* (1992), 147 Ill. 2d 1, 14.

Thus, at common law, despite the doctrine of sovereign immunity, a municipality had the duty to maintain its property in a condition free from possible injury or harm. However, this duty was not absolute:

"There are certain obvious limitations on this duty. It does not extend to a requirement that streets be kept absolutely safe so that accidents are impossible, for the city is not an insurer against injury ***." (Note, *Tort Liability of Municipal Corporations in Illinois*, 1951 U. Ill. L.F. 637, 647.)

(See also *Storen v. City of Chicago* (1940), 373 Ill. 530, 534.) Thus, section 3—102(a) is in accordance with the common law, where "[t]he law imposes a duty on all persons to exercise ordinary care *** [and there is no] general duty to anticipate and guard against the

negligence of others." *Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 366.

In this context, the language in section 3—102(a) is clear: the city has a duty to maintain its property in a reasonably safe condition so that persons using ordinary care are not harmed. Rather than limiting the city's duty to only those individuals exercising ordinary care, as the city suggests, the language "in the use of ordinary care" limits the amount of care the city need exercise in maintaining its property. This ensures that the city does not become an insurer for the traveling public's safety and that the public is not relieved of its duty to exercise ordinary care. While the city argues that section 3—102(a) provides a duty "only" to those acting with ordinary care, the word "only" is not found in the statute.

The city bases much of its interpretation on its assertion that section 3—102(a) adopted contributory negligence as a defense for local governmental units. However, section 3—102(a) is silent on this topic. The city confuses the issue of the existence of a duty with the issue of the existence of a defense, comparative or contributory negligence. As *amicus* County of Cook notes, these two issues are separate. (See also Restatement (Second) of Torts § 4 (1965).) At the time the Tort Immunity Act was adopted, contributory negligence was a defense in this State. Because of this, if the city owed and breached a duty to a plaintiff, the city was not held liable for its breach if the plaintiff was contributorily negligent to any degree. However, the plaintiff's inability to recover due to contributory negligence did not negate the municipality's duty and breach. It simply provided the municipality with a defense. As the court in *Palladini* noted:

"[Under contributory negligence], plaintiff's fault only relieved defendant from the consequences of his own

negligence; it did not obviate defendant's duty to exercise reasonable care." *Palladini*, 134 Ill. App. 3d at 348.

Section 1—101.1(b) of the Act provides that a local public entity has available all common law and statutory defenses available to a private individual. (Ill. Rev. Stat., 1986 Supp., ch. 85, par. 1—101.1(b).) Comparative negligence is now a defense in Illinois and was thus available to, and in fact used by, the city. Contributory negligence is no longer a defense at common law in Illinois, and was thus not available to the city absent some provision by the legislature. We find none. We further note that in instances where the legislature has provided for contributory negligence in various situations, it has used the phrase "contributory negligence" (see Ill. Rev. Stat. 1985, ch. 24, par. 1—4—5; Ill. Rev. Stat. 1985, ch. 34, par 301.1; Ill. Rev. Stat. 1985, ch. 121, par. 385; Ill. Rev. Stat. 1985, ch. 127$^1$/$_2$, par. 46) or "contributorily negligent" (see Ill. Rev. Stat. 1985, ch. 70, par. 2). If the legislature had wanted to codify contributory negligence in section 3—102(a), it would have used the phrase.

The city argues that our interpretation makes section 3—102 superfluous, as no need existed for the legislature to codify the common law in this area. This argument is without merit. First, if it was superfluous for the legislature to codify this common law duty, it would also have been superfluous for the legislature to codify the defense of contributory negligence, which was a common law defense at the time the Act was enacted.

Moreover, the purpose of section 3—102(a) is not to grant defenses and immunities. Instead, it merely codifies, for the benefit of intended and permitted users, the common law duty of a local public body to properly maintain its roads. Immunities and defenses are provided in other sections. (See Ill. Rev. Stat. 1985, ch. 85, pars. 1—101, 3—103 *et seq.*) As this court noted in *Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404:

"[T]he Act *** articulates the common law duty [found in section 3—102(a)] to which the subsequently delineated immunities apply." *Vesey*, 145 Ill. 2d at 412.

We conclude that under section 3—102(a) of the Act, the city has a duty to maintain its property in a reasonably safe condition so that a person acting with ordinary care will not be injured. If the city maintains its property in such a condition, it has breached no duty and a negligent plaintiff injured on the property has no cause of action. The city has no duty to foresee and prevent injuries due solely to plaintiff's own negligence. It also is not an insurer for the safety of the traveling public. However, if the city breaches this duty, even a negligent plaintiff may recover to the extent permitted under principles of comparative negligence.

### Intended and Permitted User

The city also argues that it owed plaintiff no duty because plaintiff was not an intended and permitted user of the road. Section 3—102(a) provides that a local public entity owes a duty to those persons "whom the entity intended and permitted to use the property." (Ill. Rev. Stat. 1985, ch. 85, par. 3—102.) According to the city, plaintiff was speeding and had run a red light at the time of the accident and thus was not an intended and permitted user of the road.

The city argues that the terms intended and permitted are distinct and not to be confused. (See *Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 6.) An intended user, the city argues, is one who uses property for a purpose that the city intends the property to be used. A permitted user, however, is one who uses the property for a use that is not prohibited. See *Lipper v. City of Chicago* (1992), 233 Ill. App. 3d 834, 838.

The city relies on this court's decision in *Curtis v. County of Cook* (1983), 98 Ill. 2d 158. There, this court found that plaintiffs were not intended or permitted us-

ers of the road. This was because although the plaintiffs were in motor vehicles, they were engaged in "clock-speeding," a form of racing. The city's reliance, however, is misplaced. The city confuses an intended and permitted use of its property by a negligent plaintiff with an unintended and prohibited use of the property.

In *Curtis*, this court noted:

"[Section 3—102(a)] evinces a legislative intent to extend a duty of care only to those persons by whom the local government intended the property to be used." (*Curtis*, 98 Ill. 2d at 164-65.)

Concerning whether plaintiff was an intended user of the street, this court has noted:

"Whether the defendant owed the plaintiff a duty requires this court to *** determine whether [the property] was for the intended use of the plaintiff. Intent, being a mental state, can rarely be discerned from direct proof and must ordinarily be inferred from the facts." (*Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 9.)

However, this court has also noted that the intended use of the streets is:

"for purposes of travel and as a means of access to and egress from property abutting thereon." *City of Elmhurst v. Buettgen* (1946), 394 Ill. 248, 251.

The plaintiffs in *Curtis* did not use the road for purposes of travel. However, the city does not argue that plaintiff used the city's streets for any other use than for purposes of travel. Thus, plaintiff must be found to have been an intended user of the road. Moreover, the use which plaintiff made of the road is not prohibited.

While the city argues that it has established laws against speeding and running red lights, these laws do not change the nature of plaintiff's use of the street, for purposes of travel. In arguing this, the city again attempts to apply the defense of contributory negligence to section 3—102(a). Under the city's interpretation, a negligent plaintiff could not be an intended or permit-

ted user of the street. We do not agree. The focus here is the intended and permitted use of the road, not whether that use was made by a negligent plaintiff. See *City of Chicago v. Keefe* (1885), 114 Ill. 222, 228, noting the difference between whether an activity is prohibited or lawful and whether that activity was performed negligently for the application of contributory negligence.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*