IRENE BERNAL, Plaintiff-Appellant, v. THE CITY OF HOOPESTON, Defendant-Appellee.

Fourth District   No. 4—98—1015

Argued June 23, 1999.—Opinion filed September 30, 1999.

McCULLOUGH, J., specially concurring.

William M. Roberts (argued), of Hultquist & Roberts, P.C., of Rantoul, for appellant.

John F. Martin (argued), of Dukes, Martin, Ryan & Meyer, Ltd., of Danville, for appellee.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

In February 1998, plaintiff, Irene Bernal, filed a fourth-amended complaint against defendant, City of Hoopeston (City), after falling into a water meter pit and injuring her leg, knee, hip, and back. In November 1998, the trial court granted defendant's motion for summary judgment, finding defendant immune from liability under section 3—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3—102 (West 1994)). Plaintiff appeals, arguing (1) the Act does not apply where plaintiff's injuries arose from a municipality's affirmative act; (2) the trial court erred in denying plaintiff's motion to strike paragraphs from the water superintendent's affidavit; and (3) summary judgment was improper due to existing questions of fact. We reverse and remand.

## I. BACKGROUND

According to plaintiff's affidavit, in June 1995 plaintiff and her family moved into a new residence located in Hoopeston, Illinois. Around midnight on the day she moved, plaintiff left the house and walked to her car. On her way to the car, plaintiff alleges, she fell into a water meter pit. During a discovery deposition, plaintiff stated she stepped on the cover and it came off, causing her entire leg to fall into the hole, injuring her knee, hip, and back. Plaintiff further stated she went to the hospital and doctors told her she suffered a sprained knee and hip. Plaintiff also stated she received treatment for several months and still suffers pain in her hip and back. Finally, plaintiff stated she cannot kneel or squat, sit for long periods, or lift heavy objects.

Plaintiff's brother filed an affidavit stating he inspected the water meter pit's cover. He averred the cover did not appear broken. The affidavit further stated "it appeared the cover could only have come loose if it had not been properly fastened to the opening."

In February 1998, plaintiff filed a fourth-amended complaint alleging the City attached the cover in a negligent or ineffective manner. Plaintiff's complaint further alleged negligent conduct should be inferred inasmuch as the City had sole access to the type of tool necessary to remove the cover and because the cover showed no evidence of damage due to forcible removal or loosening.

In September 1998, defendant filed a motion for summary judgment. In support of its motion, defendant submitted an affidavit from the City's water superintendent, Stephen Baker. In paragraph 9, the affidavit stated City employees properly fastened the cover after taking the most recent meter reading. In paragraph 11, the affidavit stated the City received no notice of the cover's alleged dangerous condition.

In October 1998, plaintiff moved to strike paragraphs 9 and 11 from Baker's affidavit. Plaintiff argued the affidavit provided no foundational basis for paragraph 9, making it conclusory in nature. Plaintiff supported this contention by arguing the affidavit failed to "state whether [Baker] personally replaced the cover or was present and watched the cover being replaced." Also, plaintiff argued paragraph 11 should have been stricken because plaintiff based her claim on affirmative negligence rather than failure to maintain, thereby making notice unnecessary and making paragraph 11 irrelevant.

In November 1998, the trial court denied plaintiff's motion to strike, finding plaintiff's arguments relevant to the weight of Baker's affidavit, but not to its admissibility. Also in November 1998, the trial court granted defendant's motion for summary judgment, finding "[n]either actual [n]or constructive notice through the affidavits." The trial court further held plaintiff's "argument that some act done by the City created its own notice *** is [not] nor should [it] be the law." Plaintiff filed the instant appeal.

## II. ANALYSIS

■ The trial court found the city received no notice of the defect and granted defendant's motion for summary judgment based upon section 3—102(a) of the Act (745 ILCS 10/3—102(a) (West 1994)), which states in relevant part:

> "[A] local public entity has the duty to exercise ordinary care to maintain its property *** and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition."

Relying on *Harding v. City of Highland Park*, 228 Ill. App. 3d 561, 571, 591 N.E.2d 952, 959 (1992), plaintiff argues the Act does not apply to situations where the municipality created the dangerous situation. In *Harding*, plaintiff injured herself after falling into a water meter pit. The second district held "when an affirmative act of a municipality's agents or employees causes a dangerous condition, no actual or constructive notice of said condition is required." *Harding*, 228 Ill. App. 3d at 571, 591 N.E.2d at 959. The court further recognized "evidence [existed suggesting the city created] the dangerous condition of the meter pit *** and *** these facts provided actual or constructive notice to the defendant; hence, the protection from municipal liability provided by section 3—102(a) did not apply." *Harding*, 228 Ill. App. 3d at 571, 591 N.E.2d at 959. Finally, the court acknowledged the existence of cases where plaintiffs failed to establish

notice, such as *Bellino v. Village of Lake in the Hills*, 166 Ill. App. 3d 702, 520 N.E.2d 1196 (1988), and *Palermo v. City of Chicago Heights*, 2 Ill. App. 3d 1004, 276 N.E.2d 470 (1971). However, the court distinguished *Palermo* and *Bellino*, finding neither case squarely addressed the effect on the notice requirement where the municipality negligently and affirmatively created the dangerous condition.

Defendant cites *Palermo* and argues it had no notice of the alleged defect, and therefore the trial court correctly granted its motion for summary judgment under the Act. In *Palermo*, plaintiff " 'stepped on a [water meter] lid and it tilted and *** flipped over,' " causing plaintiff's leg to fall into the hole. *Palermo*, 2 Ill. App. 3d at 1006, 276 N.E.2d at 471. The court found defendant had no actual or constructive notice of the defective cover because it existed for only a few weeks and was not plainly visible. *Palermo*, 2 Ill. App. 3d at 1009, 276 N.E.2d at 473. Defendant also cites *Pinto v. DeMunnick*, 168 Ill. App. 3d 771, 523 N.E.2d 47 (1988). There, plaintiff fell into a sinkhole on a parkway. Citing *Palermo*, the first district found plaintiff failed to show actual or constructive notice of an unsafe condition. *Pinto*, 168 Ill. App. 3d at 774-75, 523 N.E.2d at 50.

As plaintiff contends in the instant case, the problem with *Palermo* and *Pinto* is that they focus on whether defendants *received* notice. They do not directly address the issue on appeal, namely, the effect on the notice requirement where the municipality *affirmatively creates* the dangerous condition. See *Harding*, 228 Ill. App. 3d at 570, 591 N.E.2d at 958 (stating *"Palermo* [never] address[ed] this issue").

Defendant argues the second district decided *Harding* incorrectly. Defendant further contends the underpinnings of *Harding* do not support its final determination and asks this district to reject its reasoning and holding. At the outset, we note defendant conceded at oral argument that, in some situations, an affirmatively negligent act *could* constitute notice. Nevertheless, we address *Harding*.

The principal case *Harding* relies on is *Dziewatkowski v. City of Chicago*, 109 Ill. App. 2d 405, 248 N.E.2d 734 (1969). There, the city left a mound of clay and dirt on the parkway adjacent to the sidewalk. A light rain washed the clay and dirt onto the sidewalk, making the sidewalk slippery and causing plaintiff to fall. The court found "the [c]ity, having caused the work to be done on the parkway prior to the occurrence, had notice of the parkway's condition and its proximity to the sidewalk." *Dziewatkowski*, 109 Ill. App. 2d at 416, 248 N.E.2d at 740. Defendant correctly argues the first district did not decide *Dziewatkowski* under, nor even mention, the Act. However, we note the facts of *Dziewatkowski* occurred prior to the Act's passage. In any case, we are unpersuaded by defendant's argument.

Courts have repeatedly held section 3—102(a) of the Act merely codifies the common-law duty of a public entity to maintain its property. *Wagner v. City of Chicago*, 166 Ill. 2d 144, 152, 651 N.E.2d 1120, 1124 (1995). The Act also codifies the common-law notice requirement. *DiBenedetto v. Flora Township*, 219 Ill. App. 3d 1091, 1101, 580 N.E.2d 647, 654 (1991). However, as this court recognized in *Corning v. East Oakland Township*, 283 Ill. App. 3d 765, 767, 670 N.E.2d 350, 352 (1996), not all common-law duties are abrogated by the Act.

■ Beyond *Dziewatkowski*, a long line of Illinois cases establishes an "active-negligence" or "affirmative-negligence" exception to the common-law notice requirement. See, *e.g.*, *Village of Jefferson v. Chapman*, 127 Ill. 438, 447, 20 N.E. 33, 37 (1889) (stating "[i]f a municipal corporation causes work to be done which is, in its nature, dangerous to the public, it is bound to take notice of the character of the work and of the condition in which it is left, whether safe or dangerous"); *City of Chicago v. Brophy*, 79 Ill. 277, 280 (1875) (finding city must take notice of dangerous situation it created); *City of Chicago v. Johnson*, 53 Ill. 91, 95 (1869) (stating "[n]o notice was necessary to [the city] as [it] caused the [dangerous condition] to be made").

Substantial secondary authority also suggests a municipality may be liable for its own negligent acts. The Restatement (Second) of Torts recognizes "[t]here have been cases holding a local government liable for active wrongdoing as distinguished from nonfeasance." Restatement (Second) of Torts § 895C, Comment *e*, at 409 (1979). McQuillin's treatise on municipal corporations states "[i]f the defective condition is due to the act of the municipality itself, *** no notice of any kind, either actual or constructive, is necessary." 19 McQuillin on Municipal Corporations § 54.104, at 448 (3d rev. ed. 1994) (hereinafter McQuillin). In support of this proposition, McQuillin cites cases from 33 states, including *Johnson, Brophy, Chapman,* and *Dziewatkowski*. 19 McQuillin at 449-50. See also 2 S. Stevenson, Antieau on Local Government Law § 35.06(4), at 35-48 (2d ed. April 1999) ("There is no need *** to show *** notice *** when the local government itself caused the condition").

The Act "must be strictly construed against the public entity involved." *Aikens v. Morris*, 145 Ill. 2d 273, 278, 583 N.E.2d 487, 490 (1991). Inasmuch as Illinois courts have consistently held the Act is a mere codification of the common law (*Wagner*, 166 Ill. 2d at 152, 651 N.E.2d at 1124) but does not abrogate all common-law duties (*Corning*, 283 Ill. App. 3d at 767, 670 N.E.2d at 352), we find no reason to reject the common-law exception to the notice requirement where the city affirmatively creates a dangerous condition.

While not cited by either party, the fifth district recently followed

*Harding* in *Mark Twain Illinois Bank v. Clinton County*, 302 Ill. App. 3d 763, 769, 706 N.E.2d 94, 98 (1999). Moreover, other jurisdictions have also cited *Harding* with approval. See, *e.g.*, *Sherman v. District of Columbia*, 653 A.2d 866, 870 (D.C. App. 1995) (stating "[p]roof that the District had notice of the defective condition is irrelevant here, where liability is premised on the primary negligence of the District's agent"). Other courts have adopted reasoning similar to *Harding*. See, *e.g.*, *Martinez v. City of New York*, 224 A.D.2d 242, 243, 637 N.Y.S.2d 706, 707 (1996) (holding "[n]either actual nor constructive notice need be proven when the defendant is responsible for causing or creating the defective condition responsible for the injuries to the plaintiff"); *Ruwe v. Board of Township Trustees*, 29 Ohio St. 3d 59, 60, 505 N.E.2d 957, 958 (1987) (stating "[t]here is no evidence *** appellant created the [condition] or had actual notice thereof").

Other provisions of the Act and case law thereunder likewise suggest a city is liable for its own affirmative acts. For example, section 3—103(a) of the Act provides:

"(a) A local public entity is not liable under this Article for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or improvement by the legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. *The local public entity is liable, however, if after the execution of such plan or design it appears from its use that it has created a condition that it is not reasonably safe.*" (Emphasis added.) 745 ILCS 10/3—103(a) (West 1994).

Further, where a city undertakes to do something, but does it improperly, it may be liable. In *Baran v. City of Chicago Heights*, 43 Ill. 2d 177, 180-81, 251 N.E.2d 227, 229 (1969), our supreme court stated:

"In holding a city responsible for injuries thus caused[,] the court is not reviewing the city's discretion in selecting a plan. It is not controlling or passing upon the city's estimate of public needs. Nor is it deciding what the 'best' kind of improvement may be. It is simply saying that *when a city creates a hazardous condition and someone is injured as a consequence it must respond in damages*, just as others are required to do. *** A municipal corporation, like an individual or a private corporation, is required to exercise its rights and powers with such precautions as shall not subject others to injury. The rule which protects it in the exercise of its governmental functions should not be construed to relieve from liability when the plan devised, if put in operation, *leaves the city's streets in a dangerous condition* for public use." (Emphasis added.)

While the court in *Baran* did not examine the defendant's liability within the scope of section 3—102, *Baran* and section 3—103 suggest immunity does not exist where the city affirmatively created the condition causing the injury.

Finally, this court has recognized other situations where a plaintiff need not prove actual or constructive notice where defendant created the dangerous condition. See *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712, 715, 700 N.E.2d 212, 214 (1998) (holding injured invitee did not have to prove notice of hazardous condition in a store); see also *Wind v. Hy-Vee Food Stores, Inc.*, 272 Ill. App. 3d 149, 155, 650 N.E.2d 258, 262 (1995); *Donoho v. O'Connell's, Inc.*, 13 Ill. 2d 113, 122, 148 N.E.2d 434, 439 (1958). While *Reed*, *Wind*, and *Donoho* were decided in a different context and not under the Act, they are in harmony with *Harding*.

■ Based on the foregoing, we find the *Harding* reasoning persuasive. We note, however, the *Harding* court stated "when an affirmative act of a municipality's agents or employees causes a dangerous condition, *no actual or constructive notice of said condition is required*" (emphasis added) (*Harding*, 228 Ill. App. 3d at 571, 591 N.E.2d at 959); however, in the next sentence, the court found "there was evidence that the dangerous condition of the meter pit in question was created by defendant's employees and that these facts *provided actual or constructive notice* to the defendant; hence, the protection from municipal liability provided by section 3—102(a) did not apply" (emphasis added) (*Harding*, 228 Ill. App. 3d at 571, 591 N.E.2d at 959). We conclude the second approach is more appropriate and consistent with the common law (see *Chapman*, 127 Ill. at 447, 20 N.E. at 37; *Brophy*, 79 Ill. at 280) and hold a city's affirmatively negligent act constitutes notice under section 3—102 of the Act (745 ILCS 10/3—102 (West 1994)).

Since the trial court based its judgment solely upon its interpretation of the Act, we need not address plaintiff's remaining arguments.

## III. CONCLUSION

Based on the foregoing, we reverse the trial court's judgment and remand this case.

Reversed and remanded.

GARMAN, J., concurs.

JUSTICE McCULLOUGH, specially concurring:
I write this special concurrence only to make it clear as to what

we are not deciding. The instant case comes to us on the trial court's grant of summary judgment. We are not deciding the question of whether the City was guilty of an "affirmatively negligent act." A question of fact exists concerning the need for notice.

The *Harding* court had the benefit of all the evidence presented at trial. *Harding* also relied on *Dziewatkowski* in stating "when an affirmative act of a municipality's agents or employees causes a dangerous condition, no actual or constructive notice of said condition is required." *Harding*, 228 Ill. App. 3d at 571, 591 N.E.2d at 959. Additionally, *Harding* found that evidence suggested the dangerous condition was created by defendants' employees and that these facts provided actual or constructive notice to the City.

It is, at the most, premature to say the City caused the dangerous condition. The facts in *Dziewatkowski* relied on by the *Harding* court are considerably different than what is known here. In *Dziewatkowski*, plaintiff fell on a mud-coated sidewalk adjacent to a site where city workers had dug a parkway.

Nothing in the record suggests the City had done anything with respect to altering the condition of the meter and cover other than a periodic reading of the meter, the last reading—prior to the incident—being June 2, 1995. No facts suggest any construction project. The facts as they develop on remand may show the immunity statute should apply.